96 Cal.Rptr.2d 401 (2000)
81 Cal.App.4th 132
The PEOPLE, Plaintiff and Respondent,
v.
Richard Allen MITCHELL, Defendant and Appellant.
No. D034236.
Court of Appeal, Fourth District, Division One.
June 1, 2000.
Rehearing Denied June 15, 2000.
Review Denied September 13, 2000.
*402 Steven J. Carroll, Public Defender, and Gary R. Nichols, Deputy Public Defender, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and Janelle M. Boustany, Deputy Attorneys General, for Plaintiff and Respondent.
HUFFMAN, Acting P.J.
In this third appeal from Richard Allen Mitchell's judgment and sentence, we conclude that even in the wake of Monge v. California (1998) 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and People v. Monge (1997) 16 Cal.4th 826, 66 Cal. Rptr.2d 853, 941 P.2d 1121, where the government has had a full and fair opportunity to present its case unhampered by evidentiary error or other impediment, fundamental fairness requires application of equitable principles of res judicata (direct estoppel) and law of the case to preclude the relitigation of Mitchell's prior serious felony conviction allegations for purposes of both a five-year enhancement and a strike under the three strikes law. (Pen.Code,[1] §§ 667, subd. (a)(1), 667, subds. (b)-(i), 1192.7, subd. (c)(19).) Accordingly, we conclude the true findings on those allegations must be vacated and the matter remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND[2]
In a 1995 unpublished opinion, People v. Mitchell (July 26, 1995, D022353) (referred to in this opinion as "Mitchell I"), this court affirmed Mitchell's jury conviction for assault with a deadly weapon and enhancement finding of infliction of great bodily injury, the trial court's true finding he had previously suffered a prior serious felony conviction, and Mitchell's total nine-year sentence. (§§ 245, subd. (a)(1), 1192.7, subd. (c)(23), 12022.7, subd. (a), 667, subds. (a), (d) & (e).) Mitchell, through his first appointed counsel, had appealed solely on grounds his restitution fine was excessive.
Shortly after the California Supreme Court decided People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal. Rptr.2d 789, 917 P.2d 628, on the advice of his first appellate counsel, Mitchell filed an in propria persona petition for writ of habeas corpus seeking resentencing without the strike prior on grounds the trial court had erroneously believed it did not have discretion to strike such prior. In January 1997, pursuant to an order to show cause (OSC), the trial court conducted resentencing proceedings, agreeing with the prosecution that it was required to impose a mandatory five-year enhancement for Mitchell's prior serious felony which should have been imposed on his original sentence and declining to strike the prior. The court resentenced Mitchell to a total 12-year term in prison.
Mitchell, with new appellate counsel, again appealed and also filed a related petition for habeas corpus relief. After issuing an OSC, receiving further briefing and hearing oral argument, we consolidated the petition for decision with the appeal and the People's motion for costs and sanctions based on a frivolous appeal. We received additional briefing from the parties after the United States Supreme Court issued its opinion in Monge v. California, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, upholding our Supreme Court's determination in People v. Monge, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, that there is no state or federal double jeopardy bar to retrial on a *403 prior conviction allegation in a noncapital sentencing proceeding. (People v. Mange, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 (Monge I), affirmed sub nom. Monge v. California, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (Monge II)).
In a 1999 published opinion, People v. Mitchell (Jan. 7, 1999, D028246, 1999 WL 4088),[3] we granted Mitchell's petition for habeas relief on the ground he received ineffective assistance of counsel in Mitchell I because his first appellate counsel failed to raise the sufficiency of the evidence to support the bank robbery prior, which was shown as a matter of law to be insufficient on the record to support the allegations for the strike and five-year enhancement.[4] We therefore denied the motion for costs and reversed the trial court's true findings on the prior conviction allegations, remanding for retrial and resentencing in light of Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 and Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, on condition that the new sentence imposed not exceed the original nine-year term pursuant to state double jeopardy principles. On April 28, 1999, the California Supreme Court denied review in Mitchell II and ordered it not to be published.
When the case was remanded to the trial court, Mitchell filed motions to enter judgment in his favor on the serious felony allegations and to preclude retrial of those allegations for enhancement and strike purposes. Mitchell argued that despite our holding in Mitchell II that a retrial on the truth of the prior for the various allegations should be conducted on remand, legal principles other than double jeopardy, which were not considered by Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 or Mitchell II, precluded retrial of those prior allegations. Mitchell asserted that based on this court's determination, the trial court's original true findings on the bank robbery were not supported by legally sufficient evidence, entitling him to an entry of judgment of not true on those priors under the law of the case doctrine. He also claimed that such judgment then became a "plea of former judgment of acquittal" under section 1016, subdivision 4 and res judicata as to the merits in any subsequent litigation of the same controversy." Mitchell further contended the application of res judicata and collateral estoppel principles were constitutionally mandated by due process and equal protection requirements.
The prosecution responded that the trial court was bound to follow this court's clear directions to retry the prior allegations (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937), that other California appellate courts after Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 and Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 had similarly remanded insufficient determinations of serious or violent priors for retrial, that the law of this case was that the priors must be retried, that section 1016, subdivision 4 did not apply because the findings on the prior allegations were not acquittals, and that the doctrines of collateral estoppel and res judicata did not prevent a retrial on the allegations in this case.
After oral argument on the matter, the trial court denied Mitchell's motions, noting they involved an "interesting issue." Then, after Mitchell waived a jury, the court considered and determined that additional *404 evidence presented by the prosecution as to "whether or not force was used in [the] bank robbery" was sufficient to support findings the prior serious felony allegations were true for enhancement and strike purposes. After the court entered its true findings on the priors, Mitchell waived time for resentencing. The court then denied his motion to strike the prior strike allegation and imposed the nine-year lid as required by Mitchell II. Mitchell thereafter timely filed this appeal.

DISCUSSION
On appeal, Mitchell again presses his claim that a retrial of the prior allegations is barred. As below, he couches his arguments in support of this contention in terms of due process, equal protection, law of the case and res judicata, with an emphasis on the latter. In essence, Mitchell asserts that notwithstanding the holdings in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and People v. Hernandez (1998) 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465 (Hernandez), the only post-Monge I and II case from our Supreme Court, other constitutional, statutory and equitable provisions preclude retrial.
The Attorney General responds our statement in Mitchell II that there was no applicable prohibition to the retrial of the allegation of whether Mitchell suffered the prior bank robbery conviction and the holdings in Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and Hernandez, supra, 19 Cal.4th 835, 80 Cal. Rptr.2d 754, 968 P.2d 465 are dispositive of Mitchell's assertion. The Attorney General also attacks as wrong our determination in Mitchell II that Mitchell's sentence was limited to the original nine-year term by state double jeopardy principles.
Aside from reading more into Mitchell II than it actually holds, the Attorney General fails to respond to the issues raised by Mitchell on appeal that were left open by Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465. Further, the Attorney General has already fully litigated and lost a challenge to our decision to limit the total sentence in this case to nine years in Mitchell II. As noted earlier, our Supreme Court denied the Attorney General's petition for review regarding such matter, in which the Attorney General specifically invited that court to abandon or retreat from the controlling precedents of People v. Henderson (1963) 60 Cal.2d 482, 495-497, 35 Cal.Rptr. 77, 386 P.2d 677 and People v. Collins (1978) 21 Cal.3d 208, 216, 145 Cal. Rptr. 686, 577 P.2d 1026, upon which we based our "sentencing lid" determination. Such decision thus became law of the case, and we decline to revisit it at this time. (See In re Saldana (1997) 57 Cal.App.4th 620, 625; 67 Cal.Rptr.2d 183, 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 895, p. 928.)
After independently reviewing the procedural facts of this case in light of the law concerning the issues raised by Mitchell which were left unanswered by Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 and Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, as well as Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465, we conclude fundamental fairness mandates the true findings on Mitchell's prior allegations be vacated and the matter remanded with directions to enter new findings that those allegations are not true and to resentence Mitchell accordingly. We explain.

A Monge I and II, and Hernandez
As noted above, in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, our Supreme Court held that in the noncapital setting, "the state and federal prohibitions against double jeopardy do not apply." (Id. at pp. 829, 845, 66 Cal. Rptr.2d 853, 941 P.2d 1121.) In so doing, *405 the court emphasized that because the federal constitution does not require a criminal defendant in noncapital cases to have any type of trial regarding sentencing issues even when they depend on "factual determinations such as the existence of prior convictions" (id. at p. 832, 66 Cal. Rptr.2d 853, 941 P.2d 1121), in the absence of a statutory provision, a state need not provide a trial for a defendant's sentencing allegations. (Id. at p. 833, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) The court noted that, although California has statutorily provided defendants with the right to a jury trial on the truth of prior conviction allegations (§ 1025), and has expanded on that right with various procedural guaranties, i.e., providing that the allegations be proven beyond a reasonable doubt, providing that the rules of evidence apply in such trials, and providing that the defendant enjoy the privilege against self-incrimination and have the right of confrontation, these do not necessarily mean that double jeopardy protections apply. (Id. at pp. 833-834, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
The court then turned to an examination of federal law analyzing the double jeopardy clause and determined the United States Supreme Court had historically declined to extend the federal guaranty against double jeopardy to sentencing proceedings until 1981, when it did so in the death penalty case of Bullington v. Missouri (1981) 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (Bullington). (Monge I, supra, 16 Cal.4th at p. 835, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) The court in Monge I noted that it was determined in Bullington, supra, that the penalty phase of the Missouri capital trial had "`the hallmarks of the trial on guilt or innocence' [citation] and therefore that the double jeopardy prohibition applied [citation]." (Monge I, supra, 16 Cal.4th at p. 836, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) While conceding that California's statutory provision provides on its face a trial on the truth of a prior conviction allegation that has "`the hallmarks of the trial of guilt or innocence'" which has led to requiring the defendant have an attorney and notice and an opportunity to be heard, the prosecution "plead and prove" the allegation by proof beyond a reasonable doubt, and the trier of fact make a choice between two alternatives, the court then distinguished such prior conviction allegation trial from the death penalty guilt phase proceeding in Bullington, and concluded Bullington does not require application of the federal double jeopardy clause to all sentencing proceedings that have similar trial hallmarks. (Monge I, supra, 16 Cal.4th at pp. 836-839, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) Central to the court's reasoning was its characterization that the trial of a prior conviction merely establishes a defendant's "status" and not an additional "offense". (Id. at p. 838, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) The court supported its reasoning with a review of conflicting state and federal authorities on the matter before specifically holding the federal double jeopardy clause did not apply to the prior conviction allegation trial in Monge I. (Id. at pp. 839-843, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
Additionally, although recognizing that California had previously applied double jeopardy protections to bar the retrial of a sentence-enhancing allegation in the noncapital case of People v. Superior Court (Marks) (1991) 1 Cal.4th 56, 78, 2 Cal. Rptr.2d 389, 820 P.2d 613 (Marks), the court in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 distinguished Marks on grounds it was based on "a state constitutional rule of double jeopardy that precludes penalizing a defendant with a longer sentence following a successful appeal of his or her conviction[, and it] included no analysis of the complex issues [addressed in that case]." (Monge I, supra, 16 Cal.4th at p. 876, 66 Cal.Rptr.2d 853, 941 P.2d 1121, dis. opn. of Werdegar, J.))[5] The court in Monge I thereafter *406 found no reason to construe the California double jeopardy clause any differently than the federal to afford a defendant any greater protection. (Id. at pp. 843-845, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
In Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, the United States Supreme Court held that the double jeopardy clause does not preclude retrial on a prior conviction allegation in noncapital sentencing proceedings and accordingly affirmed our Supreme Court's judgment in Monge I, supra, 16 Cal.4th 826, 66 Cal. Rptr.2d 853, 941 P.2d 1121. (Monge II, supra, 524 U.S. at pp. 724, 734, 118 S.Ct. 2246.) The court in Monge II reasoned that because the double jeopardy clause protects against "successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense [citation]" (id. at pp. 727-728, 118 S.Ct. 2246), and a prior conviction determination neither is an element of the current offense nor increases the punishment for the previous offense, the clause does not apply to such decisions because they do not place a defendant in "jeopardy" for an offense. (Id. at pp. 728-729,118 S.Ct. 2246.)
The court in Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, further noted that although it had held reversals of convictions "on the ground that the prosecution proffered insufficient evidence of guilt" were comparable to an acquittal, "[sentencing decisions favorable to the defendant ... cannot generally be analogized to an acquittal." (Id. at p. 729, 118 S.Ct. 2246.) The court explained that this is so because the pronouncement of a sentence "does not `have the qualities of constitutional finality that attend an acquittal.' [Citations.]" (Ibid.) The court noted that sentencing in the death penalty context was a "`narrow exception'" to this general rule because of its "`hallmarks of a trial on guilt or innocence,'" and "the severity of the penalty at stake." (Id. at pp. 730-733, 118 S.Ct. 2246, citations omitted.) The court found that:
"Where noncapital sentencing proceedings contain trial-like protections, that is a matter of legislative grace, not constitutional command. Many States have chosen to implement procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements. We do not believe that because the States have done so, we are compelled to extend the double jeopardy bar. Indeed, were we to apply double jeopardy here, we might create disincentives that would diminish these important procedural protections." (Id. at p. 734, 118 S.Ct. 2246.)
Justice Stevens noted in his dissent in Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, that this case was the first in which the court had departed from the long-held rule that a retrial or resentencing is not permitted when the evidence at the first proceeding is insufficient as compared to there being legal error which infects the first proceeding. (Id. at pp. 735-737, 118 S.Ct. 2246, dis. opn. of Stevens, J.) Stevens thought California's decision to adopt procedural safeguards for defendants facing lengthy sentencing increases based on recidivist enhancements was "powerful evidence [the State was] responding to the traditional understanding of fundamental fairness [which dates] back centuries to the common-law plea of autrefois acquit and [is] buttressed by a special interest in finalitythat undergrids the Double Jeopardy Clause." (Id. at pp. 736-737, 118 S.Ct. 2246, fn. omitted.)
In Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465, our Supreme Court held that neither the state *407 nor federal prohibition against double jeopardy bars a trial court from changing its ruling on the applicability of a sentence enhancement. (Id. at pp. 836-837, 843, 80 Cal.Rptr.2d 754, 968 P.2d 465.) In doing so, the court basically followed the rationale of Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and Almendarez-Torres v. U.S. (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (Almendarez-Torres)[6] which held that noncapital sentencing enhancement allegations involving the defendant's prior criminal history are not elements of an offense and therefore proceedings determining their truth or application are not subject to double jeopardy protections. (Hernandez, supra, 19 Cal.4th at pp. 838-842, 80 Cal.Rptr.2d 754, 968 P.2d 465.) In her dissent, Justice Brown noted that Hernandez concerned a situation where the trial court reconsidered the "governing legal standard for imposing increased punishment for a prior serious felony conviction [and not] reconsideration of factual findings." (Id. at p. 848, 80 Cal.Rptr.2d 754, 968 P.2d 465, dis. opn. of Brown, J., italics omitted.)

B. Beyond Monge I and II, and Hernandez
In remanding the case in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, the court concluded only that retrial was not barred by double jeopardy, specifically leaving open for determination the question of whether other constitutional or statutory grounds prevented retrial. (Id. at p. 845, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) The court in Monge I noted its conclusion raised "numerous secondary issues":
"For example, the Court of Appeal's determination that the evidence was insufficient to prove defendant's prior conviction was of a serious felony is, at the very least, the law of this case. Thus, the prosecution would have to present additional evidence at a retrial of the prior conviction allegation in order to obtain a different result. What limitations might apply to this additional evidence (other than the limitations we identified in People v. Reed [ (1996) ] 13 Cal.4th 217, 52 Cal.Rptr.2d 106, 914 P.2d 184, and [People v.] Guerrero [(1988)] 44 Cal.3d 343, 243 Cal.Rptr. 688, 748 P.2d 1150) we do not decide, because the Court of Appeal did not address that issue. For the same reason, we express no opinion about whether section 1025 (or some other applicable provision) might in some cases bar retrial of the prior conviction allegation as a statutory matter irrespective of constitutional constraints. Finally, we express no opinion about whether due process protections preclude the prosecution from retrying the prior conviction allegation. [Citations.]" (Monge I, supra, 16 Cal.4th at p. 845, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
The court in Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465, reiterated the limited holdings of Monge I, supra, 16 Cal.4th 826, 66 Cal. Rptr.2d 853, 941 P.2d 1121 and Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, that state and federal double jeopardy protections do not bar retrial of a noncapital sentencing enhancement, and specifically stated: "We express no opinion as to whether other constitutional or statutory provisions preclude retrial." (Hernandez, supra, 19 Cal.4th at p. 843, 80 Cal.Rptr.2d 754, 968 P.2d 465.) In her dissenting opinion, Justice Brown also believed that the issue of whether retrial of a fact-bound enhancement allegation is precluded after a jury's not true finding is still open, noting that such was the previously *408 accepted proposition in California. (Id. at p. 849, 80 Cal.Rptr.2d 754, 968 P.2d 465, dis. opn. of Brown, J.)
What emerges from the Monge-Hernandez decisions is the proposition that some statutory or constitutional provisions other than double jeopardy may in a particular factual situation require a different result than in those cases. Mitchell contends this case is one that calls for such a different result. As mentioned above, although Mitchell couches his arguments in terms of due process, equal protection, law of the case and res judicata, it appears he mainly relies on principles of res judicata and law of the case. Before we can determine whether any of his assertions are valid, we undertake an extensive review of those equitable considerations.

C. Res Judicata and Collateral Estoppel
Our Supreme Court in People v. Davis (1995) 10 Cal.4th 463, 41 Cal.Rptr.2d 826, 896 P.2d 119 noted the subtle differences between former jeopardy and the traditional doctrines of res judicata and collateral estoppel:
"Double jeopardy precludes reprosecution for an offense of which a defendant has been acquitted or to which jeopardy has otherwise attached. Res judicata gives conclusive effect to a final judgment on the merits in subsequent litigation of the same controversy. Collateral estoppel bars relitigation of an issue decided in a previous proceeding in a different cause of action if `(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; and (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.' [Citations.]" (Id. at pp. 514-515, fn. 10, 41 Cal.Rptr.2d 826, 896 P.2d 119.)
Although the doctrines of res judicata and collateral estoppel have long been established in civil law, their application in criminal cases is of a more recent vintage. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, §§ 280-372, pp. 821-944; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 340, pp. 394-395; United States v. Oppenheimer (1916) 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (Oppenheimer); Frank v. Mangum (1915) 237 U.S. 309, 333-334, 35 S.Ct. 582, 59 L.Ed. 969.) Early in the 20th century, the United States Supreme Court recognized the doctrine of res judicata should apply in criminal as well as civil cases:
"It is a fundamental principle of jurisprudence, arising from the very nature of courts of justice and the objects for which they are established, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties. [Citation.] The principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction." (Frank v. Mangum, supra, 237 U.S. at pp. 333-334, 35 S.Ct. 582; see also Oppenheimer, supra, 242 U.S. at pp. 87-88, 37 S.Ct. 68.)
As Justice Holmes so eloquently stated in Oppenheimer:
"Upon the merits the proposition of the Government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the Fifth Amendment, that a person shall not be subject for the same offence to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offence charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.... [¶] The safeguard provided by the Constitution *409 against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the Fifth Amendment was not intended to do away with what in the civil law is a fundamental principle of justice [citation] in order, when a [person] once has been acquitted on the merits, to enable the Government to prosecute [that person] a second time." (Oppenheimer, supra, 242 U.S. at pp. 87-88, 37 S.Ct. 68.)
In Ashe v. Swenson (1970) 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (Ashe) the high court determined that the doctrine of collateral estoppel is embodied in the Fifth Amendment double jeopardy protection, which it had extended to the states through the Fourteenth Amendment in Benton v. Maryland (1969) 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. (Ashe, supra, 397 U.S. at pp. 437, 442-446, 90 S.Ct. 1189.) In deciding its applicability in a case was no longer just a matter of fundamental fairness, the court in Ashe stated:
"`Collateral estoppel' is an awkward phase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in [Oppenheimer.] ... As a rule of federal law, therefore, `[i]t is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case, either because of lack of "mutuality" or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Government's evidence as a whole although not necessarily as to every link in the chain.' [Citation.] [¶] The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict[,] this approach requires a court `to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' [Citations.]" (Ashe, supra, 397 U.S. at pp. 443-444, 90 S.Ct. 1189, fns. omitted.)
Even though the doctrine of res judicata, "which prevents relitigation by the parties of issues that have been determined by a final judgment in a previous action between the parties," is different from collateral estoppel, "which bars relitigation of previously decided issues in a new proceeding on a different cause of action" (People v. Methey (1991) 227 Cal.App.3d 349, 354, 277 Cal.Rptr. 777, disapproved on other grounds in Schlick v. Superior Court (1992) 4 Cal.4th 310, 14 Cal.Rptr.2d 406, 841 P.2d 926; see also Lucido v. Superior Court (1990) 51 Cal.3d 335, 341, fn. 3, 272 Cal.Rptr. 767, 795 P.2d 1223), the cases dealing with the doctrine of collateral estoppel are often instructive in applying the related principles of res judicata. (See People, v. Howie (1995) 41 Cal.App.4th 729, 735-736, 48 Cal.Rptr.2d 505; 1 Witkin & Epstein, Cal.Criminal Law, supra, Defenses, §§ 340-361, pp. 394-417 & 1999 supp., Defenses, §§ 340-361, pp. 156-165.) Application of each equitable doctrine has generally been limited to situations where jeopardy has attached at the previous proceeding (People v. Uhlemann (1973) 9 Cal.3d 662, 668, fn. 4, 108 Cal.Rptr. 657, 511 P.2d 609) and may apply to issues *410 finally determined in a writ proceeding. (In re Crow (1971) 4 Cal.3d 613, 621-623, 94 Cal.Rptr. 254, 483 P.2d 1206.) Each doctrine also provides that:
"`"[A] final judgment on the merits bars the parties or those in privity with them from litigating the same cause of action in a subsequent proceeding and collaterally estops parties or those in privity with them from litigating in a subsequent proceeding on a different cause of action any issue actually litigated and determined in the former proceeding. [Citations.] The application of the doctrine in a given case depends upon an affirmative answer to three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea asserted a party or in privity with a party to the prior adjudication? [Citations.]" [Citation.]' [Citations.]" (People v. Howie, supra, 41 Cal.App.4th at p. 736, 48 Cal.Rptr.2d 505.)
The doctrine of collateral estoppel, similar to res judicata, is "based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citation.]" (People v. Gephart (1979) 93 Cal.App.3d 989, 997, 156 Cal.Rptr. 489.) The purposes of both "are to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, and to provide repose by preventing a person from being harassed by vexatious litigation. [Citation.]" (Ibid.) Generally, a court in deciding whether res judicata is applicable in any particular case "must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his [or her] case. [Citation.]" (Ibid.; fn. omitted.)
For example, in In re Crow, supra, 4 Cal.3d 613, 94 Cal.Rptr. 254, 483 P.2d 1206, our Supreme Court specifically reviewed the policy reasons for res judicata in civil and criminal cases before finding it applicable, stating:
"The doctrine of res judicata in civil matters rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination. [Citations.] In criminal cases in which an individual has once been haled before a jury and found innocent, res judicata, including collateral estoppel, rests upon the double jeopardy clause of the Fifth Amendment and prevents a second prosecution for the same conduct or subject matter. [Citations.] [¶] The social policies which underlie the doctrine of res judicata and the high purpose of the writ of habeas corpus also conjoin in barring a governmental attempt to relitigate the grant of relief in habeas corpus. The writ of habeas corpus affords an efficacious means of vindicating an individual's fundamental rights. [Citation.] ...' A final order or judgment granting relief to a petitioner on habeas corpus is a conclusive determination ... [;] it is res judicata of all issues of law and fact necessarily involved in that result. [Citations.]" (Id. at pp. 622-623, 94 Cal.Rptr. 254, 483 P.2d 1206.)[7]
Because the People could have appealed the order granting the petitioner habeas corpus relief in that case, but did not do so, the court in In re Crow, supra, 4 Cal.3d 613, 94 Cal.Rptr. 254, 483 P.2d 1206, concluded that such decision became final and the judgment in the case, and the People were required by the doctrine of res judicata *411 "to act in accordance with that judgment." (Id. at p. 623, 94 Cal.Rptr. 254, 483 P.2d 1206.)
In addition, "[w]hile the doctrine of res judicata is necessarily included in the plea of once in jeopardy, that doctrine may also be applicable where a plea of once in jeopardy is not available." (People v. Beltran (1949) 94 Cal.App.2d 197, 207, 210 P.2d 238, citing Oppenheimer, supra, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161.) Thus, although the doctrine is considered a component of constitutional double jeopardy, it has been recognized as a separate equitable doctrine that may bar relitigation of prior final determinations or issues. (See ibid.; People v. Santamaria (1994) 8 Cal.4th 903, 912, fn. 3, 35 Cal.Rptr.2d 624, 884 P.2d 81 (Santamaria); People v. Mattson (1990) 50 Cal.3d 826, 853, fn. 16, 268 Cal.Rptr. 802, 789 P.2d 983; People v. Gephart, supra, 93 Cal.App.3d at p. 998, 156 Cal.Rptr. 489.)
Further, on the issue of finality, it has been said that "[t]he doctrine of finality of judgments rests upon principles of res judicata [citation], and both principles are grounded on the policy that disputes should be put to final rest by a valid final judgment rendered by a court having jurisdiction. [Citations.]" (Corral v. State Farm Mutual Auto. Ins. Co. (1979) 92 Cal.App.3d 1004, 1009, 155 Cal.Rptr. 342; see Rest.2d Judgments, ch. 1, p. 11; 7 Witkin, Cal. Procedure, supra, Judgment, § 284, p. 825.) The requirement there be a final determination on the merits for res judicata application may be shown by "a judgment, a motion, or an order that determines a substantial matter of right on issues of law or fact." (People v. Howie, supra, 41 Cal.App.4th at p. 736, 48 Cal. Rptr.2d 505; Sunkler v. McKenzie (1900) 127 Cal. 554, 556, 59 P. 982; Anderson v. Great Republic L. Ins. Co. (1940) 41 Cal. App.2d 181,196, 106 P.2d 75.)
The question arises whether the doctrines of res judicata or collateral estoppel apply to a retrial in the same proceeding. (Santamaria, supra, 8 Cal.4th at pp. 912-914, 35 Cal.Rptr.2d 624, 884 P.2d 81; Lennane v. Franchise Tax Bd. (1996) 51 Cal. App.4th 1180, 1185, 59 Cal.Rptr.2d 602.) The traditional application of such doctrines are to "successive prosecutions" (Santamaria, supra, 8 Cal.4th at p. 913, 35 Cal.Rptr.2d 624, 884 P.2d 81) or rulings from a former action (Lennane v. Franchise Tax Bd., supra, 51 Cal.App.4th at p. 1185, 59 Cal.Rptr.2d 602). Some federal courts, however, have found that such doctrines do apply to a retrial. (E.g., U.S. v. Bailin (7th Cir.1992) 977 F.2d 270, 275-280; Santamaria v. Horsley (9th Cir.1998) 133 F.3d 1242.) Regardless of the eventual resolution of such issue, both the high court and our Supreme Court have assumed that they do apply in order to examine whether the necessary elements of the doctrines have been satisfied in a particular case. (Schiro v. Farley (1994) 510 U.S. 222, 228, 232-234, 114 S.Ct. 783, 127 L.Ed.2d 47; Santamaria, supra, 8 Cal.4th at p. 916, 35 Cal.Rptr.2d 624, 884 P.2d 81.) Moreover, our Supreme Court has found that a prior appealable order may be "res judicata" and binding in the same action if it is not appealed. (In re Matthew C (1993) 6 Cal.4th 386, 393, 24 Cal.Rptr.2d 765, 862 P.2d 765.)

D. Law of the Case and Other Considerations
Because this case involves former appeals, law of the case, which is also conditioned upon equitable considerations (People v. Pacini (1981) 120 Cal.App.3d 877, 887, 174 Cal.Rptr. 820) and applies in both civil and criminal cases (People v. Shuey (1975) 13 Cal.3d 835, 841, 120 Cal. Rptr. 83, 533 P.2d 211), becomes a potential applicable doctrine. As noted in Witkin's California Procedure, the law of the case doctrine states:
"If a case is first tried, and the judgment rendered is reversed on appeal, it will ordinarily be tried again (except where the reversal is with directions to enter judgment). [Citation.] And after such retrial (and in some situations after *412 a judgment is entered pursuant to directions), another appeal may be taken. The doctrine of `law of the case' deals with the effect of the first appellate decision on the subsequent retrial or appeal: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 895, p. 928, italics omitted.)
Such doctrine normally requires adherence to an appellate court's statement in its opinion on appeal of a rule of law necessary to its decision. (Tally v. Ganahl (1907) 151 Cal. 418, 421, 90 P. 1049.) The doctrine has also been extended to apply to opinions of an appellate court in original proceedings. (Guardianship of Walters (1947) 81 Cal.App.2d 684, 685, 184 P.2d 684.) Although it will not generally apply to summary denials of writs of habeas corpus, it will apply where the writ decision is a written opinion on the resolution of a "cause". (People v. Pacini supra, 120 Cal.App.3d at p. 887, 174 Cal.Rptr. 820.) When the rule applies in criminal cases, both the prosecution and the defense are bound. (People v. Shuey, supra, 13 Cal.3d at p. 845, 120 Cal.Rptr. 83, 533 P.2d 211.)
As our Supreme Court stated in People v. Shuey, supra, 13 Cal.3d 835, 120 Cal. Rptr. 83, 533 P.2d 211:
"Application of the [law of the case] rule is now subject to the qualifications that `the point of law involved must have been necessary to the prior decision, that the matter must have been actually presented and determined by the court, and that application of the doctrine will not result in an unjust decision.' [Citations.] [¶] The doctrine, as the name implies, is exclusively concerned with issues of law and not fact. [Citations.] Examples abound, and included among others,] the legal sufficiency of evidence [citation].... [Citations.]" (Id. at p. 842, 120 Cal.Rptr. 83, 533 P.2d 211.)
With regard to the question of the legal sufficiency of evidence, the general rule is that "[w]here the sufficiency of the evidence to sustain the judgment depends on the probative value or effect of the evidence itself (as distinguished from the credibility of witnesses), and there is no substantial difference in the evidence in the retrial, the former decision is law of the case. [Citations.]" (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 906, pp. 941-942, italics omitted.) The reviewing court is thus "required to decide whether the evidence presented at the [subsequent] trial was `materially' or `essentially' or `substantially' different from that presented at the [earlier] trial to decide whether the [earlier] appellate decision controlled." (In re Marriage of Steinberg (1977) 66 Cal.App.3d 815, 821, 136 Cal.Rptr. 299, citing Estate of Baird (1924) 193 Cal. 225, 244-245, 223 P. 974.) Generally, "[additional evidence merely cumulative to evidence of the same class given on the first appeal will not carry a question outside the operation of the rule as to the law of the case, but to successfully escape the rule a new and substantial fact must be brought into the case on the subsequent appeal." (Estate of Baird, supra, 193 Cal. at p. 245, 223 P. 974.)
The comparison of evidence at the earlier and subsequent trials in the same case for purposes of applying the law of the case on legal sufficiency of evidence, however, may be impacted by the nature of the reversal in the previous appeal, i.e., whether it was a qualified reversal. We find several cases instructive on this point.
For instance, in Bank of America v. Superior Court (1990) 220 Cal.App.3d 613, 269 Cal.Rptr. 596 (Bank of America), the court considered the effect of its earlier decision in Kruse v. Bank of America (1988) 202 Cal.App.3d 38, 248 Cal.Rptr. 217 (Kruse), where the trial court had entered judgment for plaintiffs after the jury returned a verdict in favor of them *413 against Bank of America (the Bank) and it denied the Bank's motion for judgment notwithstanding the verdict (JNOV). On appeal, the judgment was reversed for legally insufficient evidence. (Bank of America, supra, 220 Cal.App.3d at p. 615, 269 Cal.Rptr. 596.) After remand, the Bank sought entry of judgment in its favor, summary judgment or summary adjudication of certain issues, and plaintiffs sought leave to amend to add another cause of action. (Id. at p. 616, 269 Cal. Rptr. 596.) When the trial court granted plaintiffs' motion and denied those brought by the Bank, the Bank petitioned for mandamus in the Court of Appeal to compel the trial court to enter judgment in its favor. (Id. at p. 617, 269 Cal.Rptr. 596.) In granting the relief requested, the court in Bank of America applied law of the case and a statutory policy similar to the exception to the general reversal rule that an unqualified reversal of a judgment remands the case for new trial (Stromer v. Browning (1968) 268 Cal.App.2d 513, 74 Cal.Rptr. 155) to avoid the anomaly that would result if the trial court's denial of the Bank's motion for JNOV were to stand in light of the appellate court's determination in Kruse that the judgment should be reversed for insufficiency of the evidence. (Bank of America, supra, 220 Cal.App.3d at pp. 620-626, 269 Cal.Rptr. 596.) The court in Bank of America found that the failure of the court in Kruse, supra, 202 Cal.App.3d 38, 248 Cal.Rptr. 217, to direct entry of judgment "would fortuitously confer" on the plaintiffs a second chance to prove their case which they would not have had if the trial court had acted correctly. (Bank of America, supra, 220 Cal.App.3d at p. 625, 269 Cal.Rptr. 596.)
In directing entry of judgment in favor of the bank, the Bank of America court specifically stated:
"Like the court in Stromer, we view the unqualified reversal rule as a general rule subject to limitations. Stromer created its exception to avoid applying the general rule to defeat the manifest intent of the appellate court to disallow retrial. It would be just as unreasonable to allow retrial under the general rule in a case where, but for the trial court's erroneous denial of the Bank's motion for [JNOV] and the Court of Appeal's failure to comply with [a statute that provided a reversal on appeal for insufficiency of the evidence concludes the litigation], real parties would clearly have lost their right to another day in court. There is no compelling policy reason to restore it to them. As our Supreme Court recently pointed out in a different context, the need to enhance the finality of judgments and avoid `an unending roundelay of litigation,' makes it `necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings.' [Citation.] The present case ... has been exhaustively litigated. We cannot assume real parties failed to marshall the best evidence, because the [JNOV] must ordinarily be predicated on the assumption that the party against whom the motion is made has presented the strongest possible case. Accordingly, we hold that the unqualified reversal rule has no application in a case where a motion for [JNOV] was made and denied by the trial court, and the appellate court reverses the judgment for insufficiency of the evidence." (Bank of America, supra, 220 Cal.App.3d at p. 626, 269 Cal.Rptr. 596.)
The reasoning of Bank of America, supra, 220 Cal.App.3d 613, 269 Cal.Rptr. 596 was applied to reach a similar result in McCoy v. Hearst Corp. (1991) 227 Cal. App.3d 1657, 278 Cal.Rptr. 596 (McCoy). In McCoy, the California Supreme Court had reversed the first judgment without directions, for insufficiency of the evidence to support a finding of actual malice for libel under the New York Times rule. (McCoy, supra, 227 Cal.App.3d at p. 1657, 278 Cal.Rptr. 596, citing New York Times v. Sullivan (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412.) On remand, when the trial court entered judgment for the defendants and dismissed *414 the action, the plaintiffs appealed, maintaining they were entitled to a new trial. (McCoy at p. 1659, 278 Cal.Rptr. 596.) In upholding the trial court, the court in McCoy noted:
"When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiffs cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence. [Citations.] ... It is anomalous to end the case when the trial court correctly enters a nonsuit or JNOV on the ground that the plaintiff has, as a matter of law, failed to prove a cause of action, but to allow plaintiff another trial when the appellate court makes the same determination, since the standard applied by the respective courts is virtually identical. [Citations.]" (McCoy, supra, 227 Cal. App.3d at p. 1661, 278 Cal.Rptr. 596.)
The court in McCoy, supra, 227 Cal. App.3d 1657, 278 Cal.Rptr. 596, further explained that a new trial under such circumstances as presented when there was a reversal for legally insufficient evidence would only be permitted for newly discovered evidence and that the matter was governed by the law of the case doctrine. (Id. at pp. 1661-1662, 278 Cal.Rptr. 596.) It concluded that "retrying the case [in McCoy] on the same evidence is a needless exercise, since the law of the case would compel another decision for the defense." (Id. at p. 1662, 278 Cal.Rptr. 596.)
In the context of criminal law, somewhat analogous reasoning to that in civil cases dealing with the rules of the law of the case and finality of judgments has been employed when the insufficiency of evidence is involved. The most noticeable example comes out of the high court's decision in Burks v. United States (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (Burks), which determined an accused may not be subjected to a second trial when his conviction in a prior trial has been reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict. In analyzing the issue, the court in Burks explained:
"It is unquestionably true that the Court of Appeals' decision `represented] a resolution, correct or not, of some or all of the factual elements of the offense charged.' [Citation.] By deciding that the Government had failed to come forward with sufficient proof of petitioner's capacity to be responsible for criminal acts, that court was clearly saying that Burks' criminal culpability had not been established. If the District Court had so held in the first instance, as the reviewing court said it should have done, a judgment of acquittal would have been entered and, of course, petitioner could not be retried for the same offense. [Citations.] Consequently, as Mr. Justice Douglas correctly perceived in Sapir[ v. United States (1955) 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426], it should make no difference that the reviewing court, rather than the trial court, determined the evidence to be insufficient[. (Id. at p. 374, 75 S.Ct. 422.)] The appellate decision unmistakably meant that the District Court has erred in failing to grant a judgment of acquittal. To hold otherwise would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court. [Citation.] [¶] The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow `the State ... to make repeated attempts to convict an individual for an alleged offense[.]' [Citations.]" (Burks, supra, 437 U.S. at pp. 10-11, 98 S.Ct. 2141, fns. omitted.)
In a footnote, the court in Burks, supra, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, recognized that on remand the trial court there may well have concluded, "after `a *415 balancing of the equities,' that a second trial should not be held," but noted that because the double jeopardy clause applied in that case, there were no equities to be balanced. (Id. at p. 11, fn. 6, 98 S.Ct. 2141.) The high court also stressed that when an appellate court has determined that the prosecution has failed to prove its case beyond a reasonable doubt, "the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." (Id. at p. 16, 98 S.Ct. 2141, fn. omitted.)[8]
However, regardless of the distinctions between civil and criminal law, "[i]n determining whether the law of the case, [which applies to both,] will control the decision on the subsequent appeal, ... the appellate court should keep in mind that `the doctrine of the law of the case, which is merely a rule of procedure and does not go to the power of the court, has been recognized as being harsh, and it will not be adhered to where its application will result in an unjust decision.' [Citation.]" (People v. Medina (1972) 6 Cal.3d 484, 492, 99 Cal.Rptr. 630, 492 P.2d 686, disapproved on other grounds in Kowis v. Howard (1992) 3 Cal.4th 888, 896-899, 12 Cal. Rptr.2d 728, 838 P.2d 250.) An unjust decision is one in which there is "at least .. demonstrated a manifest misapplication of existing principles resulting in substantial injustice." (People v. Shuey, supra, 13 Cal.3d at p. 846, 120 Cal.Rptr. 83, 533 P.2d 211.)
Moreover, because the primary purpose for application of the doctrine of law of the case "is one of judicial economy[, and i]t prevents the parties from seeking appellate reconsideration of an already decided issue in the same case absent some significant change in circumstances" (People v. Whitt (1990) 51 Cal.3d 620, 638, 274 Cal. Rptr. 252, 798 P.2d 849, citations omitted), intervening or contemporaneous changes in the law, or the establishment of a new precedent by controlling authority have been recognized as "significant changes" which provide grounds for ignoring the law of the case rule. (In re Saldana, supra, 57 Cal.App.4th at pp. 625-626, 67 Cal.Rptr.2d 183; People v. Sequeira (1982) 137 Cal. App.3d 898, 901, 188 Cal.Rptr. 470.)
To assist us in analyzing whether any of the above equitable doctrines or considerations should apply in Mitchell's favor, we turn to a brief review of statutory provisions applicable in this case.

E. Pertinent Statutory Provisions
Although we have already noted in our discussion of Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, that California has statutorily provided defendants with a right to a jury trial on the truth of prior conviction allegations, we reiterate that point and also identify other pertinent statutes applicable to this case at the time of Mitchell's 1994 offenses.
In California, the Legislature has expressly provided that the truth of a prior conviction sentence enhancement allegation "must be tried by a jury impanelled for that purpose, unless a jury is waived, in which case it may be tried by the court." (§ 9691/2; see also §§ 1025, 1158.) Further, section 1025 provided at the relevant time that "if a defendant denies having suffered an alleged prior conviction, `the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty, ... [or by the court if a *416 jury is waived]. (People v. Wiley (1995) 9 Cal.4th 580, 589, 38 Cal.Rptr.2d 347, 889 P.2d 541 (Wiley).) Section 1158 additionally provided that "if a defendant is found guilty of an offense charged in an accusatory pleading that also alleges that the defendant suffered a prior conviction, `the jury, or the judge if a jury trial is waived, must ... find whether or not he has suffered such previous conviction.'" (Wiley, supra, 9 Cal.4th at p. 589, 38 Cal.Rptr.2d 347, 889 P.2d 541.) Section 1158 also required that the trier of fact enter a "verdict or finding upon the charge of previous conviction ... [of either] true[ ] or [ ]not true."
The relevant inquiry at the time of Mitchell's first trial was whether he had previously suffered a serious felony conviction within the meaning of section 1192.7, subdivision (c) for purposes of both an enhancement under section 667, subdivision (a)(1) and a "strike" (§ 667, subds. (b)-(i)). The Penal Code requires, and did so at that time, that the People plead and prove such prior serious felony conviction allegations before they can effect the sentence imposed. (§§ 667, subds. (a), (c), 1170.1, subd. (f).) To meet such requirements, the People bear the burden of proving such sentencing allegations beyond a reasonable doubt. (People v. Tenner (1993) 6 Cal.4th 559, 566, 24 Cal.Rptr.2d 840, 862 P.2d 840; § 1096.) As Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, has pointed out, in such proceeding on the truth of the priors the rules of evidence apply (§ 1102) and the defendant enjoys the right against self-incrimination as well as the right to confront and cross-examine witnesses against him. (Monge I, supra, 16 Cal.4th at p. 834, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
Moreover, our Supreme Court has accepted that jeopardy attaches to the trial of prior conviction allegations when the jury is sworn to try the underlying current offenses. (Marks, supra, 1 Cal.4th at p. 78, fn. 22, 2 Cal.Rptr.2d 389, 820 P.2d 613; see also People v. Saunders (1993) 5 Cal.4th 580, 593, 20 Cal.Rptr.2d 638, 853 P.2d 1093.)
With these above provisions and the equitable considerations already mentioned in mind, we now return to the facts of this instant case.

F. Application of Law to This Case
As noted in the factual background, in Mitchell II we found ineffective assistance by Mitchell's first appellate counsel for failing to raise the issue of the insufficiency of the evidence to support the trial court's true findings for the prior conviction allegations required reversal of those findings. In doing so, we specifically found that as a matter of law the evidence presented by the People was insufficient on the issue of whether the federal bank robbery qualified as a serious felony in California for purposes of finding true the allegations. We thus impliedly determined that the original trial court had erroneously entered true findings for those allegations. Had the trial court entered the appropriate not true findings (§ 1158), this matter would have ended at the conclusion of the first trial on the priors since the People do not have the right to appeal those determinations (§ 1238).
Unfortunately, because Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 and Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 had recently held there was no double jeopardy bar to retrial of such allegations in a noncapital sentencing proceeding and the parties had supplementally briefed the issue of the effect of those cases, we directed the court to conduct a limited retrial. Because this court and the parties were only concerned at that time with the constitutional double jeopardy issue and no others, it appears we improvidently ordered retrial. Such, however, does not detract from our essential holding in Mitchell II that the evidence to support the serious felony finding for the prior conviction allegations was insufficient as a matter of law.
*417 The People's petition for review of Mitchell II was subsequently denied. When the matter came again before the trial court, Mitchell moved for judgment in his favor on the serious felony allegations and to preclude retrial of those allegations on grounds legal and equitable principles left open by Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 and Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and not considered in Mitchell II barred retrial. The trial court, understandably, followed our direction in Mitchell II and conducted a retrial.
We consider these procedural circumstances in light of the above legal and equitable provisions, which include the recognition by the courts in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 and Hernandez, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465 that California statutorily provides the defendant the hallmarks of a trial on guilt or innocence on the truth of prior conviction allegations, including the mandate that a true or not true finding be made,[9] and concede jeopardy attaches for such trial. We believe the procedural context of this case provides the requisite showing of finality, akin to an acquittal of an offense, for purposes of applying the equitable doctrines of res judicata and law of the case in the matter before us.
As explained above, finality is a cornerstone of both the res judicata and the law of the case doctrines. Because the issue of legally insufficient evidence to support the prior convictions allegations in Mitchell II was fully presented and was considered essential to our decision Mitchell's first appellate counsel was ineffective, when the People's petition for review of such decision was denied, it became a final decision on such merits. Then, when the People on remand did not show there was newly discovered evidence which they, in due diligence, could not have presented at the first trial on the truth of the priors, that decision and its necessary resolution of the legal sufficiency of the evidence for the prior allegations became the law of the case as between these parties. (See Monge I, supra, 16 Cal.4th at p. 845, 66 Cal.Rptr.2d 853, 941 P.2d 1121; Bank of America, supra, 220 Cal.App.3d at pp. 625-626, 269 Cal.Rptr. 596; McCoy, supra, 227 Cal.App.3d 1657, 278 Cal.Rptr. 596.)
Similar to the situations presented in Bank of America, supra, 220 Cal.App.3d 613, 269 Cal.Rptr. 596, McCoy, supra, 227 Cal.App.3d 1657, 278 Cal.Rptr. 596 and Burks, supra, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, the prosecution, with all its resources and power, had full and fair opportunity to marshall its best evidence to meet its burden of proving the prior conviction allegations here, unhampered by adverse evidentiary or other legally incorrect rulings or Mitchell's fraud. Had the trial court properly found the priors "not true" in the first trial due to the insufficiency of the evidence as required by statute, Mitchell would have been sentenced to no more than seven years in prison, a maximum four-year upper term for the assault plus the three-year great bodily injury enhancement. Had Mitchell's first appellate counsel properly done his job, there would have been no retrial.
Under these circumstances, we believe res judicata principles, independent of their constitutional double jeopardy aspect and as a fundamental principle of justice, also apply and preclude retrial of the prior allegations in this case. (See Oppenheimer, supra, 242 U.S. at pp. 87-88, 37 S.Ct. 68.) Such equitable doctrine, like collateral estoppel, is not to be applied with a "hypertechnical and archaic approach." (Ashe, supra, 397 U.S. at p. 444, 90 S.Ct. 1189.) Although traditionally the doctrines have required the issue or cause to have been determined in a former action, *418 it is reasonable to allow application of the principles of such doctrines in the same case where there has already been one fair trial, as here, on the issue in controversy between the same parties. (See U.S. v. Bailin, supra, 977 F.2d at pp. 275-280.)
In this case, in addition to our valid, final decision on the merits of the legal sufficiency of the evidence to prove a serious felony prior which satisfies the requirement of finality for application of res judicata principles, the identical issue that was decided in Mitchell II is squarely presented and the People are the same party as in the earlier determination. (People v. Howie, supra, 41 Cal.App.4th at p. 736, 48 Cal.Rptr.2d 505.) Neither the application here of res judicata principles or the law of the case doctrine will render an unfair result. Rather, not to allow the application of such equitable doctrines in this case would, in the words of our high court, "create a purely arbitrary distinction between those in [Mitchell's] position and others who would enjoy the benefit of a correct decision by the [first trial court]." (Burks, supra, 437 U.S. at p. 11, 98 S.Ct. 2141.) Plainly, the People should not be permitted to have a second bite of the apple, which is in essence what they have been given by the trial court's denial of Mitchell's motions on remand of Mitchell II. As noted by Justice Werdegar in her dissent in Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121, "the specter of a defendant being retried innumerable times on the same allegations until the People finally succeed in proving them true is indeed disturbing." (Id. at p. 878, 66 Cal.Rptr.2d 853, 941 P.2d 1121, dis. opn. of Werdegar, J.)
We have resolved the issues in this case in accordance with equitable principles and California's decision to accord procedural safeguards to defendants facing lengthy sentences based on recidivist enhancements. Such principles compel a conclusion that fundamental fairness requires, in the interests of finality, the true findings on the priors should be reversed and the matter remanded to the trial court to enter not true findings on those priors consistent with our determination in Mitchell II. Accordingly, we do not address Mitchell's constitutional arguments regarding due process and equal protection as separate grounds for relief.

DISPOSITION
The trial court's true findings on the prior serious felony conviction allegations under section 667, subdivision (a)(1) for enhancement purposes and under section 667, subdivisions (b) through (i) for purposes of the three strikes law are reversed. The matter is remanded to the trial court with directions to enter not true findings for those allegations and to resentence Mitchell as may be appropriate.[10]
HALLER, J., and McDONALD, J., concur.
NOTES
[1] All statutory references are to the Penal Code unless otherwise specified.
[2] At Mitchell's request, we have taken judicial notice of the records and opinions in his other appeals in Nos. D022353, D028246 and D030421. (Evid.Code, § 459, subd. (a).)
[3] As we note later in the text, although People v. Mitchell, supra, 1999 WL 4088 was denied review, the Reporter of Decisions was directed not to publish the opinion in the Official Reports. (Cal. Const., art. VI, § 14; Cal. Rules of Court, rule 976.)
[4] We dismissed Mitchell's accompanying appeal as moot, declining to address any other issues raised regarding his prior convictions. (People v. Mitchell, supra, D028246, 1999 WL 4088 [nonpub. opn.] (Mitchell II)).
[5] In her dissent, Justice Werdegar found the lead opinion's attempt to distinguish Marks, supra, 1 Cal.4th 56, 2 Cal.Rptr.2d 389, 820 P.2d 613, unpersuasive, noting Marks was only one of many cases in which California had previously afforded double jeopardy protections to bar retrial of analogous sentence enhancements. (Monge I, supra, 16 Cal.4th at pp. 877-878, 66 Cal.Rptr.2d 853, 941 P.2d 1121, dis. opn. of Werdegar, J.)
[6] The court in Almendarez-Torres, which considered a recidivist statute capable of increasing the defendant's sentence ten-fold, discussed in more detail than in Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, the considerations relevant to determining when an enhancement allegation may be an element of the offense for federal constitutional purposes. (Almendarez-Torres, supra, 523 U.S. at pp. 239-247, 118 S.Ct. 1219; Hernandez, supra, 19 Cal.4th at pp. 840-842, 80 Cal.Rptr.2d 754, 968 P.2d 465.)
[7] For a historic overview of the doctrine of res judicata in civil cases see Bernhard v. Bank of America (1942) 19 Cal.2d 807, 810-814, 122 P.2d 892 and 7 Witkin, Cal. Procedure, supra, Judgment, sections 280-282, 284, pages 820-826.
[8] As mentioned earlier. Monge II, supra, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615, rejected an argument that the rule of Burks, supra, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, required double jeopardy protection in a noncapital sentencing proceeding because "[t]he pronouncement of sentence simply does not `have the qualities of constitutional finality that attend an acquittal,' [citations.]." (Monge II, supra, 524 U.S. at p. 729, 118 S.Ct. 2246.) Because Monge II, like Burks, did not discuss whether equitable or statutory considerations might bar retrial, they are not authority which preclude our review of such matters specifically left open by Monge I, supra, 16 Cal.4th 826, 66 Cal.Rptr.2d 853, 941 P.2d 1121 and Hernandez, supra, 19 Cal.4th 835, 80 Cal.Rptr.2d 754, 968 P.2d 465.
[9] In fact, where a court or jury has failed to make such finding, case authority has long required that a not true finding be entered. (People v. Gutieirez (1993) 14 Cal.App.4th 1425, 1440, 18 Cal.Rptr.2d 371, citing People v. Eppinger (1895) 109 Cal. 294, 41 P. 1037.)
[10] We express no opinion as to the calculation of the determinate sentence in this case after the true findings on the prior conviction have been vacated. As we have noted, the maximum term available would be seven years. Such term is less than the term originally imposed and thus does not present the issue of sentence limitation we discussed in Mitchell II.