[No. B131005. Second Dist., Div. Three. Dec. 21, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE SCOTT, Defendant and Appellant.

---

**COUNSEL**

Sharon L. Rhodes, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey, William V. Ballough and Renee Rich, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**CROSKEY, J.**—It is settled that the doctrine of double jeopardy will not bar the retrial of a prior conviction allegation after reversal on the ground of evidentiary insufficiency. (*People v. Monge* (1997) 16 Cal.4th 826, 843, 844-845 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (*Monge*).) The principal issue which we consider in this appeal is whether such a retrial nonetheless may be barred on the ground of res judicata, collateral estoppel or law of the case.

The appellant, George Scott, appeals from the judgment entered following his convictions by jury of second degree burglary (Pen. Code, § 459),[1] second degree robbery (§ 211), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)), each with personal infliction of great bodily injury (§ 12022.7, subd. (a)), and with findings that he suffered four prior felony convictions (§ 667, subd. (d)), and three prior serious felony convictions (§ 667, subd. (a)(1)). He was sentenced to prison for 43 years to life.

As we explain, when a true finding as to a prior conviction allegation is reversed on appeal due to evidentiary insufficiency, *People v. Morton* (1953) 41 Cal.2d 536 [261 P.2d 523] (*Morton*), *People v. Rice* (1988) 200 Cal.App.3d 647 [246 Cal.Rptr. 177] (*Rice*) and section 1262 compel the conclusion that the case must be remanded for a retrial of that allegation. Neither res judicata nor collateral estoppel precludes such a retrial. Similarly, the doctrine of the law of the case will be ineffective to prevent a true finding upon retrial, provided that the People, at such retrial, present *additional* evidence beyond that previously found to be insufficient.

---

[1]Unless otherwise indicated, statutory references are to the Penal Code.

We are aware that a recent decision of another Court of Appeal (see *People v. Mitchell* (2000) 81 Cal.App.4th 132 [96 Cal.Rptr.2d 401] (hereafter *Mitchell III*)) has held that fundamental fairness requires that the doctrines of res judicata and law of the case preclude a retrial when true findings as to prior conviction allegations are reversed on appeal due to insufficiency of the evidence. However, that case arose in a very specific and unusual factual and procedural context and is entirely distinguishable from the more common circumstances presented by the facts of this case. Moreover, such distinction aside, we believe that *Mitchell III* was wrongly decided and we respectfully decline to follow it.

*Mitchell III* also failed to consider or discuss either *Morton*, *Rice*, section 1262 or the impact of such authorities on the issues raised. In addition, its "res judicata and collateral estoppel" analysis is not supported by relevant authority and its application of the doctrine of "law of the case" constitutes an unwarranted extension of the conclusion articulated by the Supreme Court in *Monge* and, in our view, inappropriately relies upon principles applicable only in civil cases.

Thus, while we conclude that the People failed to present sufficient evidence to support a true finding that appellant's alleged prior 1981 conviction was for a "serious felony," we nonetheless will remand the matter for a retrial at which the People may, if they can, present *additional* evidence to support their allegations. Contrary to the views expressed in *Mitchell III*, we see no basis for any requirement that such additional evidence be *newly discovered*.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence, the sufficiency of which as to the substantive offenses is undisputed, established that, on July 17, 1998, appellant committed the charged offenses in Los Angeles County by entering a church restroom and, once inside, feloniously assaulting and robbing Cristina Sanchez. Appellant presented an alibi defense, which the jury rejected. Appellant raises no issue on appeal with respect to his convictions on the substantive offenses.

## CONTENTIONS

On appeal, appellant raises two contentions with respect to a prior felony conviction with which he was charged and as to which the trial court made true findings. Appellant contends "the true finding as to the strike allegation

and the prior serious felony enhancement allegation for the 1981 conviction must be reversed as there was insufficient evidence that the conviction qualified as either a strike or a prior serious felony." In his supplemental brief, appellant contends "retrial as to the truth of the strike allegation and the prior serious felony enhancement allegation for the 1981 conviction is barred by the doctrines of law of the case and res judicata and would violate appellant's state and federal constitutional rights to due process." We agree with appellant's first contention, but reject his second.

## DISCUSSION

### 1. The Evidentiary Sufficiency Issue as to the 1981 Robbery Conviction

#### a. Factual Background

The second amended information alleged, in pertinent part, that appellant committed assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 3), second degree robbery (§ 211; count 4), and second degree commercial burglary (§ 459; count 5).[2] It also alleged that appellant had suffered four prior serious felony convictions, for purposes of the Three Strikes law and section 667, subdivision (a)(1). One of those prior convictions, and the one at issue here, was for a December 17, 1981 robbery conviction (*People v. Scott* (Super. Ct. L.A. County, 1981, No. A371596)).[3]

Appellant's trial on the prior conviction allegations was divided into two phases: a jury trial on pertinent nonidentity issues, followed by a court trial on the identity issue. During the jury trial phase, the sole items of evidence proffered by the People were exhibit Nos. 17 and 18. Exhibit No. 17 consisted of a "prison packet," that is, certified copies of documents from the California Department of Corrections (CDC) which that agency had

---

[2]Counts 1 and 2 involved a different victim, were later dismissed, and are not at issue.

[3]The remaining three alleged prior convictions were two 1985 robbery convictions (*People v. Scott* (Super. Ct. L.A. County, 1985, No. A768756)) and one 1993 robbery conviction (*People v. Scott* (Super. Ct. L.A. County, 1993, No. BA068687)). All of the prior conviction allegations were found true, and there is no dispute as to the validity of those findings, *except for the true finding as to the 1981 robbery conviction.* Accordingly, there is no dispute, even absent the 1981 robbery conviction, that the court was required to impose a sentence of 25 years to life pursuant to the "Three Strikes" law based on the true findings as to the three remaining prior convictions. However, we will nonetheless consider and decide appellant's sufficiency contention since, if he is correct, his sentence was unauthorized to the extent the court relied on the 1981 robbery conviction to impose that sentence. Moreover, if appellant's sufficiency contention is correct, imposition of one of the three 5-year terms pursuant to section 667, subdivision (a), constituted an unauthorized sentence.

provided in compliance with section 969b.[4] This exhibit pertained to prior convictions other than the prior conviction at issue here, but was offered as relevant to the *identification* of appellant with respect to the 1981 robbery conviction.

People's exhibit No. 18 relates directly to the prior conviction at issue and consists of two documents. The first is a copy of a letter dated August 28, 1998, from the State of California, Youth and Adult Correctional Agency, Department of the Youth Authority, master files. It is addressed to the Los Angeles County District Attorney's Office, and reflects that it pertains to a George Scott, superior court No. A371596.[5]

The second document is a certified copy of a form which reflects that a George Scott was an 18-year-old Black male whose birth date was April 24, 1963. It also reflects that on December 17, 1981, Judge D. M. Rothman, in Los Angeles County Superior Court, "commit[ted]" Scott in *People v. Scott, supra,* No. A371596 for the offense of "211PC Robbery w/12022.5PC Use of a firearm." There were three other entries on the form which provide no information as to the substance of appellant's conviction.[6]

At trial, the People moved both of these exhibits into evidence and appellant, after some discussion, finally pressed an objection only to exhibit No. 18, which was overruled.[7] The exhibits were then received in evidence.

---

[4]People's exhibit No. 17 contained a "cumulative case summary [¶] chronological history" (capitalization omitted) reflecting an entry dated December 13, 1985 (this date is also found in People's exhibit No. 18, discussed *post*); the entry is "Audited." People's exhibit No. 17 also contained a California prison photograph of a man named "G Scott" with No. D18682, dated September 4, 1997. It further contained evidence of a George Scott's birth date, fingerprints and the signature of a George Scott (No. D18682) identifying him as the person who suffered two prior convictions (the evidentiary sufficiency of the evidence of which is undisputed) other than the prior conviction at issue.

[5]The letter states, "Dear Sir: [¶] Your request of August 27, 1998 for information to establish a prior conviction in the above case has been received. [¶] Our records indicate that the subject was committed to the Youth Authority by the Superior Court of Los Angeles County on December 17, 1981 for 211PC Robbery; 12022.5PC Use of a Firearm and was discharged from the Youth Authority on December 13, 1985. Since the subject's commitment ended in 1985, we are unable to supply you with the regular material, as under the present policy, we do not retain case files on discharged wards beyond the period of seven years. [¶] This is to certify that the foregoing is true and correct information from the original document on file in this office. I am sorry we are unable to comply with your request." (Italics omitted.) The letter is signed by the supervisor of master files.

[6]One entry is dated February 8, 1982; that entry is "Full Board." Another entry is dated December 13, 1985; that entry is "Discharged-Dishonorable [¶] Committed to CDC, D-18682." A third entry reflects December 13, 1985, as a discharge date.

[7]At a sidebar conference, appellant objected to People's exhibit No. 18, stating, "[y]our Honor, while the People cite 969(b) I don't know that this qualifies. It also does not constitute

The jury found true the nonidentity allegations as to all four prior convictions.[8]

At the March 25, 1999 court trial on the identity issue, the People submitted the matter based on People's exhibit Nos. 17 and 18, including the photograph of George Scott in exhibit No. 17. Appellant presented no defense evidence, but urged "the court to find that the package is inadequate particularly as I think it is number 18, the letter from C.Y.A. I think that that is clearly inadequate." The court rejected this argument and found true the identity allegation as to all four prior convictions. Appellant was thereafter sentenced to prison for 43 years to life.[9]

b. *The Evidence Presented by the People Was Not Sufficient to Prove That the 1981 Conviction Constituted a "Serious Felony"*

██ A finding that appellant had suffered a prior felony conviction (§ 667, subd. (d)), and a prior serious felony conviction (§ 667, subd. (a)(1)), could only be sustained if the prior conviction at issue was for a "serious felony."[10] In this case, that would mean: (1) "any felony in which the defendant personally uses a firearm" (§ 1192.7, subd. (c)(8)); (2) robbery (§ 1192.7, subd. (c)(19)); and/or (3) "any felony in which the defendant personally used a dangerous or deadly weapon" (§ 1192.7, subd. (c)(24)).

In *People v. Martinez* (2000) 22 Cal.4th 106 [91 Cal.Rptr.2d 687, 990 P.2d 563] (*Martinez*), our Supreme Court concluded that items other than the "record of conviction," and certified prison records admissible under section 969b, are admissible to establish issues pertaining to a prior conviction, as long as such other evidence does not pertain to the *substance* of a prior conviction. For example, such other evidence is admissible to establish such matters as the *fact* of the prior conviction (i.e., that someone suffered it) and the *identity* of the defendant as the person who suffered it. (*Martinez, supra,* 22 Cal.4th at pp. 113-118.)

---

the type of record, rather it is an indication that they don't have the records that are required. [¶] I don't think that comes in under 969(b)." The court replied, "[i]t appears to be a certification from the Department of Youth Authority with a cover letter. And I will allow it over objection." Appellant withdrew his objection to People's exhibit No. 17.

[8]The validity of these findings is undisputed, except for the true findings based on the prior conviction at issue, that is, *People v. Scott, supra,* No. A371596.

[9]Although there were four prior serious felony conviction allegations, the court imposed only three prior serious felony conviction enhancements, apparently because two of the four prior convictions were not "brought and tried separately" for purposes of section 667, subdivision (a)(1).

[10]We recognize that the prior felony conviction at issue was alleged under the Three Strikes law (§ 667, subd. (d)) and the prior serious felony conviction was alleged under section 667, subdivision (a), and that there were true findings as to both of these allegations. However, for the sake of simplicity and clarity, we will hereafter refer to both of these allegations, as well as the trial court findings made thereon, in the singular.

In *People v. Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150] (*Guerrero*), the Supreme Court previously had established evidentiary limitations on the "permissible scope of proof to establish the *substance* of a prior conviction, i.e., the nature and circumstances of the underlying conduct." (*Martinez, supra*, 22 Cal.4th at p. 117.) *Guerrero* concluded that the trier of fact could "look to the record of the conviction-*but no further . . . .*" to establish the substance of the prior conviction. (*Guerrero, supra*, 44 Cal.3d at p. 355, italics in original.) Thus, evidence other than the "record of conviction" may not be utilized to prove that appellant's 1981 conviction met the definition of a "serious felony."

In this case, the People relied entirely upon exhibit No. 18 to prove this critical fact. However, we note that the prosecutor proffered People's exhibit No. 18 "pursuant to Penal Code section 969(b)." Appellant argues that exhibit No. 18 is *not* part of the "record of conviction"[11] *and the People do not dispute this claim.* (Cf. *People v. Rhoden* (1989) 216 Cal.App.3d 1242, 1255-1257 [265 Cal.Rptr. 355];[12] see *People v. Reed, supra*, 13 Cal.4th at p. 223.) Therefore, since the trier of fact could "look to the record of the conviction-*but no further*," the jury could not rely on People's exhibit No. 18 to prove the substance of the prior conviction at issue.

While not disputing the conclusion that exhibit No. 18 was not part of the "record of conviction," the People nonetheless argue that the exhibit was admissible under section 969b.[13] We reject that argument as contrary to *Guerrero* and as a misreading of section 969b. That section allows admission

---

[11]In *People v. Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184], the Supreme Court, citing *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [285 Cal.Rptr. 213], indicated that the term "record of conviction" could be defined to mean the "record on appeal." (*People v. Reed, supra*, 13 Cal.4th at p. 223.) *Abarca* concluded that the "record of conviction" included "any items considered a normal part of the record under California Rules of Court, rule 33 . . . ." (*People v. Abarca, supra*, 233 Cal.App.3d at p. 1350.) *Reed* also indicated that the term "record of conviction" could be narrowly construed to refer only to those "record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People v. Reed, supra*, 13 Cal.4th at p. 223.)

[12]*Rhoden* held that a Florida prison form containing an incriminating statement by the defendant was not part of the "record of conviction" for purposes of determining whether a Florida prior conviction supported a section 667, subdivision (a)(1) enhancement. (*People v. Rhoden, supra*, 216 Cal.App.3d at pp. 1255-1257.)

[13]Section 969b provides, "[f]or the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison, county jail or city jail of this State, and has served a term therefor in any penal institution, or has been convicted of an act in any other state, which would be punishable as a crime in this State, and has served a term therefor in any state penitentiary, reformatory, county jail or city jail, or has been convicted of an act declared to be a crime by any act or law of the United States, and has served a term therefor in any penal institution, the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been

of certified prison records to prove the *fact* of a felony conviction, but not the *substance* of that conviction.[14]

Thus, as there was no other evidence presented on the point, we must conclude that there was insufficient evidence to prove appellant suffered a prior serious felony conviction based on appellant's prior robbery conviction in *People v. Scott, supra,* No. A371596; we must therefore reverse the true finding as to that allegation. (See *People v. Rodriguez* (1998) 17 Cal.4th 253, 261-262 [70 Cal.Rptr.2d 334, 949 P.2d 31]; *People v. Cortez* (1999) 73 Cal.App.4th 276, 279-284 [86 Cal.Rptr.2d 234].) However, the People contend that they are nonetheless entitled to the opportunity to retry this issue and produce additional evidence which is admissible to prove the *substance* of appellant's prior conviction. We now turn to that issue.

### 2. *The People's Right to a Retrial of the Prior Conviction Allegation*

#### a. *The Principles of Double Jeopardy Do Not Bar a Retrial*

In *Monge, supra,* 16 Cal.4th 826, our Supreme Court held that federal and state double jeopardy principles do not bar a retrial of a prior conviction allegation in a noncapital case after a true finding as to the allegation has been reversed on appeal due to insufficiency of the evidence. (*Monge, supra,* 16 Cal.4th at pp. 829, 845.) At the end of *Monge*'s state double jeopardy discussion, the Supreme Court stated, "[a]ccordingly, we conclude that the double jeopardy provision of the state Constitution does not apply to the trial of the prior conviction allegation in this case. (Cf. *People v. Morton[, supra,]* 41 Cal.2d 536 . . . [*permitting retrial of a prior conviction allegation under facts similar to those here, but without discussing double jeopardy*].)" (*Id.* at p. 845, italics added.) This approving reference to *Morton* is significant.

#### b. *A Retrial Is the Proper Procedure*

In *Morton*, a defendant was convicted of noncapital offenses and adjudged a habitual criminal under former section 644, subdivision (a). (*Morton, supra,* 41 Cal.2d at p. 538.) The Supreme Court concluded there was insufficient evidence to support the prior conviction allegation based on that

---

imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

[14]It is often the case that documents admitted in evidence pursuant to section 969b contain items which are part of the "record of conviction"; however, that is not the case in this matter. Here, the record reflects that appellant was convicted as an adult, and suggests he was merely housed at the California Youth Authority because he was young. We need not reach the issue of whether People's exhibit No. 18 is a "record[]" of a "reformatory" for purposes of section 969b.

subdivision. (*Id.* at pp. 539-541.) The court then turned to the issue of disposition and, based on conflicting appellate court precedent, identified separate approaches which had been adopted by various appellate courts.[15] In the fourth of these, the appellate courts, in essence, had ordered the prior conviction finding set aside and *remanded the case for a new trial on the prior conviction allegation.* (*Id.* at pp. 541-542.) The *Morton* court concluded that this was the correct approach.

*Morton* made it clear that a retrial of the question of whether the defendant had suffered a prior conviction for a particular offense was entirely proper. "*This procedure is the proper one. It carries out the policy of the statutes imposing 'more severe punishment, proportionate to their persistence in crime, of those who have proved immune to lesser punishment' [citation], and prevents defendants from escaping the penalties imposed by those statutes through technical defects in pleadings or proof. It affords the defendant a fair hearing on the charge, and if it cannot be proved he will not have to suffer the more severe punishment.*" (*Morton, supra,* 41 Cal.2d at pp. 544-545, italics added.)

As *Monge* noted, *Morton* did not discuss double jeopardy. Thus, *Monge* approvingly cited *Morton,* not because *Morton* contained a discussion of double jeopardy directly supportive of the issue raised in *Monge,* but because *Morton* (a unanimous decision authored by Justice Traynor) held that, once a true finding as to a prior conviction allegation was reversed on appeal due to insufficiency of the evidence, *the proper procedure was to remand the case for a retrial on the allegation.* (See *People v. Valladoli* (1996) 13 Cal.4th 590, 599 [54 Cal.Rptr.2d 695, 918 P.2d 999] [*Morton* "involved whether the evidence was sufficient to prove a certain prior conviction and, if not, what the proper procedure would be on remand"].)[16] Until our Supreme Court holds otherwise, we are compelled to follow *Morton.* (*Auto Equity Sales, Inc.*

---

[15]In essence, the four approaches were: (1) the judgment could be reversed and the matter remanded for a new trial on the allegations as to both the substantive offense and the prior conviction; (2) similar to (1), unless, following remand, the prosecutor successfully sought dismissal of the prior conviction allegation at issue; (3) the judgment could be modified to set aside the prior conviction finding; and (4) similar to (3), except that the case would be remanded for a retrial on the prior conviction allegation. (*Morton, supra,* 41 Cal.2d at pp. 541-542.)

[16]We note that other cases from this district have previously relied on *Morton.* In *People v. Moore* (1992) 8 Cal.App.4th 411 [10 Cal.Rptr.2d 286], the defendant claimed his admission of a prior conviction allegation was constitutionally defective and section 1025 barred a retrial of the allegation because the jury which tried the substantive offense did not try the prior conviction allegation. (*People v. Moore, supra,* 8 Cal.App.4th at pp. 420-421.) In *Moore,* Division Four of this district agreed the admission was defective but rejected the section 1025 argument, noting "*there is a well-established practice of ordering a retrial on the issue of an alleged prior conviction in cases where reversal is confined to the prior conviction and the conviction for the primary offense is affirmed.*" (*Id.* at p. 421, italics added.) *Moore* later

*v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Appellant, however, argues that a retrial is nonetheless barred under the principles of res judicata, collateral estoppel and law of the case.[17] For that proposition he relies upon *Mitchell III, supra,* 81 Cal.App.4th 132. That case recently concluded that "even in the wake of *Monge v. California* (1998) 524 U.S. 721 [118 S.Ct. 2246, 141 L.Ed.2d 615] and *People v. Monge*[, *supra,*] 16 Cal.4th 826 . . . , where the government has had a full and fair opportunity to present its case unhampered by evidentiary error or other impediment, fundamental fairness requires application of equitable principles of res judicata (direct estoppel) and law of the case to preclude the relitigation of [the defendant's] prior serious felony conviction allegations for purposes of both a five-year enhancement and a strike under the three strikes law. (Pen. Code, §§ 667, subd. (a)(1), 667, subds. (b)-(i), 1192.7, subd. (c)(19).)" (*Mitchell III, supra,* 81 Cal.App.4th at p. 136, fn. omitted.) As a result, the *Mitchell III* court, relying on its own earlier appellate decision which had held there was insufficient evidence to support such allegations, reversed the true findings which were entered following a previously ordered retrial of the allegations. (*Id.* at pp. 136-138, 155, 157.) We are therefore required to consider the impact of *Mitchell III* on the People's claimed right to a retrial in this matter.

### c. *Neither Res Judicata Nor Collateral Estoppel Precludes a Retrial*

██ "Double jeopardy precludes reprosecution for an offense of which a defendant has been acquitted or to which jeopardy has otherwise attached. Res judicata gives conclusive effect to a final judgment on the merits in subsequent litigation of the same controversy. Collateral estoppel bars relitigation of an issue decided in a previous proceeding in a different cause of action if '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; and (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.' [Citations.]" (*People v. Davis* (1995) 10 Cal.4th 463, 514-515, fn. 10 [41 Cal.Rptr.2d 826, 896 P.2d 119].)

---

observed, "[t]his practice is consistent with the decision of the Supreme Court in *People v. Morton* . . ." (*People v. Moore, supra,* 8 Cal.App.4th at p. 421), then quoted from *Morton.* (*Id.* at pp. 421-422.) (See also 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1530, pp. 1825-1826 [noting *Morton*'s conclusion that the proper procedure is retrial].)

[17]Appellant also raises an issue of due process, but it is essentially duplicative of his res judicata argument because it is the claimed failure to apply the principles of that doctrine which forms the basis for his due process argument.

*Mitchell III* acknowledges that the principles of res judicata and collateral estoppel have been long established in civil law, but their application in criminal matters "is of a more recent vintage. [Citations.]" (*Mitchell III, supra,* 81 Cal.App.4th at pp. 143-144.) As *Mitchell III* also acknowledges, however, the application of these doctrines in criminal cases still demands adherence to the same basic principles, the foremost of which is that a *final judgment* is required to preclude relitigation of an issue or claim. (*Id.* at pp. 143-147.)

As *Mitchell III* clearly recognized, this raises the question as to whether either of these doctrines can apply to preclude a retrial *in the same proceeding.* (*Mitchell III, supra,* 81 Cal.App.4th at p. 147.) "The traditional application of such doctrines are to '*successive prosecutions*' [citation] or rulings from a *former action.* [Citation.]" (*Id.* at pp. 147-148, italics added.) Nonetheless, *Mitchell III*, emphasizing the particular procedural context presented by that case, concluded that its own earlier determination that the People's evidence was insufficient to support a "true finding" as to the defendant's alleged prior conviction provided "the requisite showing of 'finality,' akin to an acquittal of an offense, for purposes of applying the equitable doctrines of res judicata . . . ." (*Mitchell III, supra,* at p. 155.)

In *Mitchell III,* the defendant had been convicted of a felony and a prior serious felony allegation had been found to be true. His conviction and nine-year sentence, as well as the true finding as to the prior conviction allegation, were affirmed on appeal.[18] Later, the appellate court issued a writ of habeas corpus on the ground that the defendant's counsel had been ineffective for failing to challenge the sufficiency of the evidence presented to support the prior conviction allegation.[19] The court, after a hearing, concluded that the evidence had been insufficient as a matter of law, reversed the true finding and remanded for further proceedings.[20] In sending it back for a retrial, the appellate court in *Mitchell II* ordered that a new trial be conducted in light of the then recent decisions (in *Monge, supra,* 16 Cal.4th 826 and *Monge v. California, supra,* 524 U.S. 721) which had held that there was no state or federal double jeopardy bar to a retrial on a

---

[18]This decision was expressed in a 1995 unpublished opinion, which we will refer to as *Mitchell I.* (See *Mitchell III, supra,* 81 Cal.App.4th at p. 136.)

[19]This proceeding was initiated after defendant had been *resentenced* in 1997 following, and as a result of, the Supreme Court's decision in *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. Defendant was resentenced to a 12-year term and his new counsel not only appealed but also filed a petition for a writ of habeas corpus.

[20]The order granting defendant's habeas corpus petition was made in a 1999 published opinion, which was later ordered not to be published by the Supreme Court when it denied the People's petition for review. (See *Mitchell III, supra,* 81 Cal.App.4th at p. 137.) In the interests of clarity and simplicity, we will refer to the 1999 opinion as *Mitchell II.*

prior conviction allegation in a noncapital sentencing proceeding.[21] (*Mitchell III, supra*, 81 Cal.App.4th at pp. 136-137.)

When the matter again returned to the trial court, defendant's counsel argued that a retrial, despite the holding in *Mitchell II*, was improper, not because of double jeopardy, but because of res judicata, collateral estoppel and law of the case (i.e., the court in *Mitchell II* had held that evidentiary insufficiency existed as a matter of law). While the trial court noted that this argument raised an "interesting issue," it rejected it and, after a bench trial, made a true finding as to the prior conviction allegation. (*Mitchell III, supra*, 81 Cal.App.4th at pp. 137-138.) Defendant then filed an appeal.

It was this factual and procedural context which was then presented to the *Mitchell III* court and led to the decision upon which appellant now relies in this matter. It also explains what the *Mitchell III* court had in mind when it said, "[w]e believe *the procedural context of this case* provides the requisite showing of 'finality,' akin to an acquittal of an offense, for purposes of applying the equitable doctrines of res judicata and law of the case in the matter before us. [¶] . . . [F]inality is a cornerstone of both the res judicata and law of the case doctrines. Because the issue of legally insufficient evidence to support the prior convictions allegations in *Mitchell II* was fully presented and was considered essential to our decision [that the defendant's] first appellate counsel was ineffective, when the People's petition for review of such decision was denied, it became *a final decision on such merits.*" (*Mitchell III, supra*, 81 Cal.App.4th at p. 155, italics added.)

Whatever the merits of the reasoning and conclusion of *Mitchell III*, by which it concluded that there was sufficient finality to justify the application of res judicata and collateral estoppel to a subsequent proceeding *in the same case*, we do not have such facts here. We have no prior adjudication of evidentiary insufficiency; we are making that determination in *this* opinion (see pt. 1, *ante*). Thus, to the extent that *Mitchell III* relied upon its own particular factual and procedural context in reaching its conclusion as to the presence of the necessary "finality," it is entirely distinguishable and inapplicable to this case. This distinction aside, however, we believe that *Mitchell III* was wrongly decided.

*Mitchell III* repeatedly acknowledged that "finality" is a cornerstone of the res judicata and collateral estoppel doctrines. (*Mitchell III, supra*, 81 Cal.App.4th at pp. 143-148, 155.) In our view, the necessary finality cannot exist in the context of successive hearings which take place in the *same* proceeding or action. This conclusion is supported by settled principles.

---

[21]The *Mitchell II* court conditioned its remand order with the requirement that any resentencing of the defendant not exceed his original nine-year sentence.

" ' "[A] *final judgment on the merits* bars the parties or those in privity with them from litigating the same cause of action *in a subsequent proceeding* and collaterally estops parties or those in privity with them from litigating in a subsequent proceeding on a different cause of action any issue actually litigated and determined in the *former proceeding.*" ' " (*People v. Howie* (1995) 41 Cal.App.4th 729, 736 [48 Cal.Rptr.2d 505], italics added.) Thus, in order for res judicata or collateral estoppel to apply there must be a *final* judgment or determination of an issue; that is, a judgment or determination that is final in the sense that no further judicial act remains to be done to end the litigation. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment § 306, p. 856.) These principles apply in criminal proceedings as well as civil. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 201, pp. 561-562.)

In the context of collateral estoppel, our Supreme Court has, on at least two occasions, questioned whether that doctrine can be applied in the *same proceeding.* (*People v. Memro* (1995) 11 Cal.4th 786, 821-822 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *People v. Santamaria* (1994) 8 Cal.4th 903, 913 [35 Cal.Rptr.2d 624, 884 P.2d 81].) Certainly, there is no basis on which to apply the doctrine where the People have prevailed on the issue involved and a retrial is ordered. (*People v. Santamaria, supra,* 8 Cal.4th at pp. 913-914.) The policies underlying collateral estoppel simply are not implicated in such circumstances. A retrial after the *reversal* of a conviction or "true finding" is not the sort of governmental action which needs to be restrained by the doctrine. (*Ibid.*)

When asserted in the same proceeding, the question of "finality" is obviously a predicate inquiry. While the proceeding or action still continues, the required finality is necessarily absent. In our view, that was the case in *Mitchell III.* Nonetheless, that court found finality in its prior decision (*Mitchell II*), which had determined that the People's case (as to the existence of a prior conviction) had been evidentiarily insufficient as a matter of law. However, that "final" decision also remanded the matter for a retrial of the issue. Thus, the very appellate order to which *Mitchell III* now gives preclusive effect was clearly interlocutory in nature. A remand was ordered to provide the People with the opportunity to present *additional* evidence on the prior conviction allegation. Clearly, this was not a *final* order. As the Restatement Second of Judgments states: "The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of *issue preclusion* (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue *in another action* that is determined to be *sufficiently firm to be accorded conclusive effect.*" (Rest.2d Judgments, § 13, italics added.) This section "makes the general common-sense point that such conclusive carry-over effect should not be accorded a

judgment which is considered merely tentative in the very action in which it was rendered. On the contrary, the judgment must ordinarily be a firm and stable one, the 'last word' *of the rendering court*—a 'final' judgment." (*Id.*, § 13, com. a, p. 132, italics added; see also, *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 936-940 [190 Cal.Rptr. 29].)

*Mitchell III* justifies its refusal to apply these principles on the grounds of equity and fairness. "Although traditionally the doctrines have required the issue or cause to have been determined in a former action, it is reasonable to allow application of the principles of such doctrines in the same case where there has already been one fair trial, as here, on the issue in controversy between the same parties." (*Mitchell III, supra,* 81 Cal.App.4th at p. 156.) To do otherwise, *Mitchell III* argues, would be unfair to the defendant. The People have had a fair chance to prove their case and had the trial judge recognized the legal insufficiency of the evidence presented and entered a "not true" finding the defendant could not be subjected to a retrial as the People are not authorized to appeal such a determination. (§ 1238.) The *Mitchell III* court emphasized that the defendant should not be penalized because it was the appellate court, rather than the trial judge, which discovered the evidentiary insufficiency.

There are two problems with *Mitchell III*'s analysis. First, no authority whatever is provided to support this departure from established principles. Second, *Mitchell III*'s analysis ignores settled law. For example, it concluded that its earlier decision regarding evidentiary insufficiency (in *Mitchell II*) provided the requisite finality "akin to an acquittal of an offense." This seems to be inconsistent with the observation of the United States Supreme Court in *Monge v. California* when it said, "[s]entencing decisions favorable to the defendant . . . cannot generally be analogized to an acquittal." (*Monge v. California, supra,* 524 U.S. at p. 729 [118 S.Ct. at p. 2251].) In rejecting an analogy to a case (*Burks v. United States* (1978) 437 U.S. 1 [98 S.Ct. 2141, 57 L.Ed.2d 1]) in which a conviction for a *substantive* offense was reversed due to evidentiary insufficiency and where a retrial was properly precluded, the Supreme Court stated, "[w]here a similar failure of proof occurs in a sentencing proceeding, however, the analogy is inapt. The pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal.' [Citations.]." (*Monge v. California, supra,* 524 U.S. at p. 729 [118 S.Ct. at p. 2251].)

Even more to the point, as we have already explained, our Supreme Court's decision in *Morton* makes clear that the very retrial ordered by *Mitchell II* was *the* proper procedure following its reversal of the true finding on the defendant's prior conviction on the grounds of evidentiary insufficiency. (*Morton, supra,* 41 Cal.2d at pp. 544-545.) In addition, section 1262

provides a general reversal rule applicable to criminal cases.[22] Absent a contrary direction from the appellate court, a general reversal of a criminal judgment is *deemed* to be an order for a new trial. (See, e.g., *People v. Hogue* (1991) 228 Cal.App.3d 1500, 1506 [279 Cal.Rptr. 647].) There is no principled basis on which *Mitchell III* could ignore such directives merely because the result appears to be "unfair." At least, such a result cannot be justified on the grounds of res judicata or collateral estoppel. The required "finality" is simply not present.

In addition to the lack of finality, there are strong policy reasons to reject the reasoning and conclusion of *Mitchell III*. In *Rice, supra,* 200 Cal.App.3d 647, the court explained that whether the defendant has suffered a prior conviction is a matter of the defendant's current "status." The "jury is *not* asked to determine whether the defendant was 'guilty' of the prior conviction or whether the prior conviction was validly obtained or is void." (*Rice, supra,* 200 Cal.App.3d at p. 654.)

In *Rice,* the defendant was found to have suffered two prior convictions even though, in a previous trial in a *different* case, one of those prior convictions had been found to be "not true." The defendant argued that under the principles of collateral estoppel, the People should not have been entitled to charge and prove such prior in connection with his present offense. In a case which presented a far more compelling equitable posture than is found in *Mitchell III*, the *Rice* court rejected the defendant's argument. "First, the Legislature requires a prior conviction be specifically charged and admitted or found true in the action for the new offense before any additional penalty based on the prior may be imposed. (Pen. Code, § 667.6, subd. (d).) The Legislature has thus rejected the application of collateral estoppel by the prosecutor to [a] prior conviction and has, instead, required the prior to be specifically proven in the new action regardless of whether or not a previous jury found the prior 'true.' *Under these circumstances, it would seem anomalous to allow the defendant to raise the collateral estoppel doctrine when the prosecutor cannot, particularly when the Legislature has stated its intent to have the issue specifically pleaded and litigated anew in the trial of the new offense.* The Legislature has safeguarded the defendant's rights by allowing the defendant repeated opportunities to litigate the truth of the prior. [¶] Second, it would be anomalous to apply the doctrine of collateral estoppel to prevent litigation of the truth of an allegation the defendant has a prior conviction when the related doctrine of former jeopardy does not apply. [Citation.] The doctrine of former jeopardy does

---

[22]Section 1262 provides, in relevant part: "If a judgment against the defendant is reversed, such reversal shall be deemed an order for a new trial, unless the appellate court shall otherwise direct. . . ."

not apply because the increased punishment is not due to the former crime but solely due to the new crime. Nor does the policy behind former jeopardy—preventing the government from harassing a defendant by initiating repeated actions involving the same charges—apply here. The enhancements are not government-initiated harassment of the defendant; the defendant's own conduct in committing a new offense triggers the charging of the enhancement." (*Rice, supra,* 200 Cal.App.3d at pp. 654-655, italics added.)

As the Supreme Court commented in *Monge,* "[I]n a trial of a prior conviction allegation, the factual determinations are generally divorced from the facts of the present offense, and the evidence does not overlap at all. Like a trial in which the defendant's age or gender is at issue, the prior conviction trial merely determines a question of the defendant's continuing status, irrespective of the present offense, and the prosecution may reallege and retry that status in as many successive cases as it is relevant [citations], even if a prior jury has rejected the allegation [citation]. If a jury rejects the allegation, it has not acquitted the defendant of his prior conviction status. [Citation.] 'A defendant cannot be "acquitted" of that status any more than he can be "acquitted" of being a certain age or sex or any other inherent fact.' [Citation.]" (*Monge, supra,* 16 Cal.4th at p. 839.) While these comments were made in the context of an analysis of the application of double jeopardy, they seem equally cogent in our consideration of the related doctrines of res judicata and collateral estoppel.

Finally, *Mitchell III* also mentioned, almost in passing and mostly by way of historical background, that some cases have held that the doctrines of res judicata and collateral estoppel could be applied to preclude a retrial (i.e., a second hearing or trial in the *same case*). We have examined each of those cases and none of them stand for such a proposition, nor do they otherwise provide any support for the conclusion reached in *Mitchell III.*

In *People v. Santamaria, supra,* 8 Cal.4th 903, a case in which a defendant sought to apply collateral estoppel to an issue presented in the retrial of a count *for a substantive offense,* the Supreme Court stated, "we *question* whether collateral estoppel applies to the *same* proceeding where the government *won* by securing a conviction of the substantive count. The policies behind the doctrine do not clearly support its application to a retrial of that count." (*Id.* at p. 913, first italics added.) In any event, *Santamaria* simply *assumed,* arguendo, that the doctrine could apply in the same proceeding, then went on to conclude on the merits that the elements of the doctrine had not been satisfied in that case. (*Id.* at pp. 916-926.) It provides no authority whatever for the application of collateral estoppel in this matter.

In *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180 [59 Cal.Rptr.2d 602], a tax case, the court concluded that "[t]he doctrine of res judicata *fail*[*ed*] because, . . . the first ruling was not in a *former* action . . ." (*id.* at p. 1185, citations omitted, first italics added), but in the same action. However, the court did state that "a prior *appealable* order becomes 'res judicata' *in the sense that it becomes binding* in the same case if not appealed. (*In re Matthew C.* (1993) 6 Cal.4th 386, 393 [24 Cal.Rptr.2d 765, 862 P.2d 765].)" (*Id.* at pp. 1185-1186, italics added.) We have no such circumstance here as the reversal and retrial order made in *Mitchell II* clearly contemplated the very retrial which *Mitchell III* later held was improper. In any event, the *Lennane* court did not hold that the order at issue in that case was res judicata in the proper sense of that term, with the result that a claim at a later *retrial* was foreclosed.

*U.S. v. Bailin* (7th Cir. 1992) 977 F.2d 270, involved a retrial following a *hung jury*. Our own Supreme Court later observed that *Bailin* "might be distinguishable because, . . . *it did not concern a retrial of a conviction reversed on appeal*, but rather retrial of counts the first jury could not agree upon, . . ." (*People v. Santamaria, supra,* 8 Cal.4th at p. 915, fn. 5, italics added.)

In *Santamaria v. Horsley* (9th Cir. 1998) 133 F.3d 1242 (which involved a federal review of the issues raised in *People v. Santamaria*), the Ninth Circuit Court of Appeals did not, as claimed by the court in *Mitchell III*, "find" collateral estoppel applicable, but stated, "*we assume without deciding* that the doctrine [of collateral estoppel] does apply to retrials." (*Santamaria v. Horsley, supra,* 133 F.3d at p. 1244, italics added.) The Ninth Circuit went on to conclude, *on the merits*, that collateral estoppel did *not* apply in that case, specifically, that the collateral estoppel component of federal *double jeopardy* principles did not apply. (*Id.* at pp. 1244-1248.)

Finally, the case of *Schiro v. Farley* (1994) 510 U.S. 222 [114 S.Ct. 783, 127 L.Ed.2d 47], did *assume* that an acquittal as to a substantive offense could implicate the doctrine of collateral estoppel during a capital sentencing determination. (*Schiro v. Farley, supra,* 510 U.S. at p. 232 [114 S.Ct. at pp. 790-791].) However, *Schiro* stated it would not "address" the issue, since, on the merits, the doctrine did not apply. (*Ibid.*) Importantly, *Mitchell III* omits the fact that the defendant in *Schiro* sought application of "*constitutional* collateral estoppel" principles based on "the Double Jeopardy Clause [which] incorporates the doctrine of collateral estoppel in criminal proceedings." (*Schiro v. Farley, supra,* 510 U.S. at p. 232 [114 S.Ct. at p. 790], italics added.) As we have already pointed out, however, the United States Supreme Court, in *Monge v. California, supra,* 524 U.S. 721, has since held

that federal double jeopardy principles do not apply in noncapital sentencing proceedings. (*Id.* at p. 724 [118 S.Ct. at p. 2248].)

For all of the foregoing reasons, we reject the reasoning and conclusion of *Mitchell III* and decline to follow it. We believe that there is no sound legal basis for applying either res judicata or collateral estoppel to preclude a retrial of the prior conviction allegation filed against appellant.

### d. *The Doctrine of "Law of the Case" Will Not Preclude a Retrial*

Appellant also contends that our determination that the evidence was not sufficient to prove the alleged prior serious felony conviction will become the law of the case upon remand and thereby prevent the trial court from reaching a contrary conclusion. We disagree.

The answer to this argument is clearly and easily settled by the express language of the Supreme Court in *Monge.* After concluding that neither state nor federal double jeopardy principles would bar a retrial of a prior conviction allegation, the court went on to note that secondary issues might well be raised. "For example, the Court of Appeal's determination that the evidence was insufficient to prove defendant's prior conviction was of a serious felony is, at the very least, the law of this case. Thus, the prosecution would have to present additional evidence at a retrial of the prior conviction allegation in order to obtain a different result. What limitations might apply to this additional evidence (other than the limitations we identified in *People v. Reed, supra,* 13 Cal.4th 217, and *Guerrero, supra,* 44 Cal.3d 343) we do not decide, because the Court of Appeal did not address that issue." (*Monge, supra,* 16 Cal.4th at p. 845.)

Although dicta, this language is dispositive of the issue before us. To the extent that the People attempt on remand to prove the prior conviction allegation using only the evidence presented at the first trial, then the law of the case will compel the same result (i.e., the evidence is insufficient). However, the doctrine cannot be used to *prevent* the retrial. It merely means that, in order to succeed, the People will have to produce *additional* evidence at such retrial. Although the *Mitchell III* court asserts that such additional evidence must be "newly discovered evidence which [the People] in due diligence, could not have presented at the first trial," it cites no authority for such a requirement. *Mitchell III* relies partially on *Monge* for that principle, but *Monge* expressly requires only that there be "*additional* evidence."

The other two cases cited by *Mitchell III*, in support of its conclusion that any additional evidence be "newly discovered," were two civil cases,

*Bank of America v. Superior Court* (1991) 220 Cal.App.3d 613 [269 Cal.Rptr. 596] and *McCoy v. Hearst Corp.* (1991) 227 Cal.App.3d 1657 [278 Cal.Rptr. 596]. However, they each stand for the well-established and unremarkable proposition that when a *civil* case is reversed on the ground of insufficiency of the evidence, the case is properly terminated; it is not remanded for a new trial. This result is nothing more than an expression of the rationale which underlies Code of Civil Procedure section 639. That section requires an appellate court to order entry of a judgment notwithstanding the verdict when it determines, by its finding that the evidence was insufficient, that the trial court had erroneously failed to do so. (*Bank of America v. Superior Court, supra,* 220 Cal.App.3d at p. 624.)

Similarly, *McCoy,* which relied on *Bank of America,* stated "[w]hen the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, saved for newly discovered evidence. (See Code Civ. Proc., §§ 629, 657; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 18 et seq.)[23] When trial courts grant nonsuits or judgments notwithstanding the verdict based on insufficiency of the evidence and are affirmed on appeal, new trials do not follow as a matter of course. Certainly, where the plaintiff's evidence is insufficient as a matter of law to support a judgment for plaintiff, a reversal with directions to enter judgment for the defendant is proper. [Citations.]" (*McCoy v. Hearst Corp., supra,* 227 Cal.App.3d at p. 1661, fn. omitted.)[24]

 It does not appear that these well-settled principles applicable in civil cases have any relevance to the case before us. They certainly provide no authority for *Mitchell III'*s assertion that the law of the case doctrine would preclude a retrial in the absence of *newly discovered* additional evidence. Moreover, such a result would offend the principles articulated in *Morton* which we discussed earlier and which describe as *the proper procedure* the remand for retrial of a prior conviction allegation without imposing the burden of such an additional showing. It would also offend section 1262,

---

[23]The reference here to "newly discovered evidence" is, of course, made in the context of a new trial motion in a civil case (Code Civ. Proc., § 657), a circumstance which is not before us in this matter.

[24]*Mitchell III* also sought support for its holding in the conclusion of *Burks v. United States, supra,* 437 U.S. 1, that an appellate court's reversal of a conviction for a *substantive* offense due to insufficiency of the evidence precluded a retrial. (*Mitchell III, supra,* 81 Cal.App.4th at pp. 151-152.) As *Mitchell III* itself notes, however, *Burks* was a federal double jeopardy decision, and the United States Supreme Court in *Monge v. California,* 524 U.S. 721, has since concluded that federal double jeopardy principles do not apply in noncapital *sentencing* proceedings.

which articulates a general reversal rule applicable in criminal cases but which is not burdened with an exception such as that found in Code of Civil Procedure section 629.[25]

## DISPOSITION

The judgment is affirmed, except that appellant's sentence is vacated, the true findings as to the allegations that appellant suffered a 1981 robbery conviction in case No. A371596 pursuant to (1) the Three Strikes law (§ 667, subd. (d)) and (2) section 667, subdivision (a)(1), are reversed, and the matter is remanded for a retrial as to those allegations and for further proceedings not inconsistent with this opinion.

Klein, P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 11, 2001. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.

---

[25]Appellant contends in a supplemental letter brief that *Bank of America* and *McCoy* "ruled that reversals for insufficient evidence were exceptions to the general rule that an unqualified reversal remands a case for a new trial." This assertion is certainly a correct statement of the law in civil cases. However, appellant has not directed our attention to any criminal statute, or policy supported by one, which provides for a similar exception to the *criminal* general reversal rule set out in section 1262.