[No. F035027. Fifth Dist. Jan. 7, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ISAAC SOTELLO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, and IV.A.

## COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Robert P.

Whitlock, Judy Kaida and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORNELL, J.**—Appellant Isaac Sotello (Sotello) was convicted of receiving stolen property. Allegations that he had committed one prior serious felony within the meaning of the three strikes law and that he had committed a felony within five years of prison confinement also were found true. Sotello appeals his conviction alleging there was insufficient evidence to support a jury finding of guilty. He also alleges the trial court erred when: 1) it did not give jury instructions concerning eyewitness testimony; and 2) it did give instructions regarding juror misconduct. Sotello appeals his sentence alleging that there was insufficient evidence to support a true finding that he had committed a prior strike felony. We will affirm Sotello's conviction, reverse the true finding of his prior strike and remand for further proceedings.

### PROCEDURAL SUMMARY

Sotello was charged by information with receiving stolen property, a felony violation of Penal Code[1] section 496, subdivision (a). It also was alleged that Sotello had suffered one strike prior within the meaning of the three strikes law, sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i). It was further alleged that Sotello had committed a felony within five years of having been confined in prison in violation of section 667.5.

On December 19, 1999, Sotello was found guilty of receiving stolen property following a jury trial. On December 20, 1999, the allegation of the commission of a felony within five years of prison confinement was found true following a one-day bench trial. It does not appear from the record that the trial court made any findings concerning the allegation that Sotello had suffered a prior conviction of a violent or serious felony within the meaning of the sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i).

At the sentencing hearing held January 19, 2000, Sotello was sentenced to the midterm of two years, which was doubled to four years under the three strikes law, plus one year pursuant to section 667.5. The total prison term imposed was five years. This appeal followed.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

## Factual Summary

On August 31, 1999, Julie Jackson (Jackson) was sleeping in her bedroom in a Visalia apartment complex. Sometime after 10:00 p.m., she was awakened by the sound of "a bunch of people" in her apartment. The group apparently entered through the front door, which had been left open because the apartment was hot. Sotello was one of the group who had entered the apartment. He went into the bedroom to talk to Jackson; Jackson told Sotello to leave and to tell his friends to leave as well. Sotello went into the other room and conveyed the message and then returned to Jackson's bedroom to talk to Jackson.

When Sotello returned to Jackson's bedroom, Jackson received a brief telephone call. After the call, Jackson got up to walk Sotello out of the apartment. Approximately five minutes had elapsed between the time Sotello told the others to leave and the time Jackson got up to walk Sotello out. When Jackson walked Sotello out through her apartment, she noticed that several items were missing, including some angel figurines and a small television set. Jackson became very angry and ran out the door. She heard a car start and she ran toward the parking lot and tried, unsuccessfully, to chase the car down.

Desiree Coburn (Coburn) lived in the same apartment complex and was watching her television late that evening. Coburn's testimony regarding the events that transpired after the group of men left Jackson's apartment formed the evidentiary basis of the prosecution's case.

Coburn testified that while she was watching the television she heard a noise outside and looked out her window. She saw three men huddled near the manager's apartment door. The three were giggling and trying to tell each other to be quiet. Coburn became suspicious of the three men and noticed them move past her front door. She went to her front door and opened it and the three men, who were immediately on the other side of the door, nearly fell in when the door was opened.

Coburn yelled at the three men who then fled. She noticed that the largest of the three men was carrying a television set. Coburn chased the men and she saw one of the men drop the television set as he fled. She stopped chasing the men at that point and she was going to return to her apartment to have her mother call the police when she noticed a passing police car. She waived the police car down.

At various points during her testimony, Coburn identified the person she had seen with the television set as Sotello. She testified that she did not see

the television being carried by the younger person in the group or by the other adult. Coburn identified Sotello as the person carrying the television to a police officer about two hours after the incident. She also testified at trial that she was 99 percent certain that the person she had seen with the television was Sotello. Coburn testified that she told a police investigator about three months after the event that she would not be able to pick the person carrying the television out of a crowd.

The police officer who was passing by was Luis Carrillo (Carrillo). He testified that as he drove by the apartment complex, there appeared to be a disturbance and he saw three men running eastward away from the apartment building. Carrillo detained two of the men and the third ran away carrying a bag. The two initial detainees were identified as Sotello and his brother, A., a minor. The third person eventually returned and was identified as Robert Licon (Licon).

Carrillo testified that a search of the surrounding area revealed a bag similar to the one Licon was seen carrying, which contained the angel figurines belonging to Jackson. The bag was recovered from the vicinity where Licon had fled. The television set also was found. Carrillo testified that the witnesses identified Sotello during a "field lineup." Shoe prints were found in the dirt next to where the television was found. The prints resembled Sotello's, but were not conclusively identified as being from Sotello's shoes.

Sotello testified that he and the others had gone to Jackson's apartment hoping to have sex with her. When she refused to service the group, the men, who were waiting outside the bedroom, decided to take some of Jackson's possessions as they left. A. was among those in that group.

Sotello testified that after he left Jackson's apartment, he ran into A., who was carrying Jackson's television set. Sotello became angry and told A. to drop the television, which A. did. Sotello testified that he and A. had spotted Licon huddled by the manager's apartment and that they were passing by Coburn's door at the time Coburn opened the door and started chasing Licon. According to Sotello, Coburn chased Licon past them.

A. testified essentially to the same story. He testified that he picked up the television set from Jackson's room and carried it until he met his brother, who ordered him to drop the set. A. also testified that he had been arrested for burglary and was awaiting trial in juvenile court.

Eddie Espirito, a friend of Sotello, testified that he received a number of telephone calls from Sotello while Sotello was incarcerated asking Espirito to try to get Jackson to "drop the charges" or to refuse to identify Sotello.

During the one-day trial on the strike prior, the People produced evidence establishing the identity of Sotello as the person who had been convicted of assault with a firearm in 1994. No evidence was presented as to particular facts relating to the commission of that offense.

DISCUSSION

I.-III.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

IV. *True Finding of Strike Prior*

A. *Sufficiency of the Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Remedy*

 Sotello asserts that considerations of "fundamental fairness and due process" require that the finding of true on the prior strike be reversed without remand for retrial. Without otherwise labeling his arguments, Sotello essentially contends that where the People have once been afforded the opportunity fully to litigate the allegation of a prior serious felony and where it has been found that there is not sufficient evidence in the record to support a true finding, the People may not subsequently be afforded "another bite at the apple."

We begin by noting there is currently a split of authority on the issue of whether a case should be remanded for retrial where the trial court's finding of true on an allegation of the existence of a prior strike is found to be unsupported by substantial evidence on appeal. In *People v. Mitchell* (2000) 81 Cal.App.4th 132 [96 Cal.Rptr.2d 401] (*Mitchell III*), the Fourth District Court of Appeal determined that consideration of res judicata, collateral estoppel, law of the case and statutory law may prohibit retrial where there has been an appellate determination of insufficient evidence to sustain a true finding on an allegation of a strike prior. (See generally *ibid*.) Division Three of the Second District Court of Appeal in *People v. Scott* (2000) 85 Cal.App.4th 905 [102 Cal.Rptr.2d 622] (*Scott*), addressed the identical issue and came to the opposite conclusion that, where there was an appellate finding of insufficient evidence to sustain an allegation of a prior strike, the proper remedy is to remand the case for retrial on the issue of the allegation,

*See footnote, *ante*, page 1349.

affording the People an opportunity to present evidence not presented during the first trial. (*Id.* at pp. 915-916, 924.)

The issue of whether considerations of double jeopardy prevent retrial when a finding of true on a strike prior is reversed for insufficient evidence has been definitively answered. The California Supreme Court in *People v. Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (*Monge I*), held that state and federal constitutional protections against double jeopardy do not prevent retrial on sentencing issues. (*Id.* at p. 845.) However, the court in *Monge I* specifically noted that its holding was restricted to the narrow issue of whether considerations of double jeopardy prohibited retrial. The court expressly left undecided the issue of whether such a retrial might be prevented for any other statutory, equitable or jurisprudential reason. (*Ibid.*)

■ The United States Supreme Court in *Monge v. California* (1998) 524 U.S. 721 [118 S.Ct. 2246, 141 L.Ed.2d 615] (*Monge II*), upheld the California Supreme Court decision in *Monge I*, but did so on the narrow holding that the established double jeopardy bar to relitigation of sentencing decisions found in the capital case of *Bullington v. Missouri* (1981) 451 U.S. 430 [101 S.Ct. 1852, 68 L.Ed.2d 270], was applicable to capital cases only. (*Monge II, supra*, 524 U.S. at pp. 732-733 [118 S.Ct. at pp. 2252-2253].) Justice Stevens, in his dissenting opinion, noted that the court entirely left aside consideration of the "cardinal principle" that "the Double Jeopardy Clause prohibits a ' "second bite at the apple." ' " (*Id.* at pp. 734-735 [118 S.Ct. at pp. 2253-2254] (dis. opn. of Stevens, J.), quoting *Burks v. United States* (1978) 437 U.S. 1, 17 [98 S.Ct. 2141, 2150, 57 L.Ed.2d 1].) Thus, while both *Monge I* and *Monge II* prevent the application of double jeopardy principles to the determination of whether a retrial may be had on the issue of a sentencing enhancement, neither case expressly prevents the application of other statutory, judicial or equitable principles to decide the same question.

■ In reaching the conclusion that retrial on the issue of the defendant's strike status was the proper approach, the court in *Scott* reasoned that when the California Supreme Court in *Monge I* cited with approval its prior decision in *People v. Morton* (1953) 41 Cal.2d 536 [261 P.2d 523] (*Monge I, supra*, 16 Cal.4th at p. 845), the Supreme Court had impliedly sanctioned remand and retrial as the appropriate remedy. (*Scott, supra*, 85 Cal.App.4th at p. 914.) In *Morton*, the Supreme Court reviewed the range of responses of appellate courts up to that time in situations where sentencing enhancements under recidivist statutes were found unsupported by substantial evidence on review. (*People v. Morton, supra*, 41 Cal.2d at pp. 541-543.) The *Morton*

court, after a discussion of public policy considerations, determined that the preferred course of action was to reverse and remand for retrial limited to the issue of the defendant's recidivist status. (*Id.* at pp. 544-545.) The *Scott* court further determined that, contrary to the conclusion in *Mitchell III*, considerations of res judicata and collateral estoppel did not bar retrial because the determination of the trial court with respect to the allegations of prior strikes is not a "final judgment" for purposes of those doctrines. (*Scott, supra,* 85 Cal.App.4th at p. 914.) In so deciding, the *Scott* court relied on the United States Supreme Court decision in *Monge II, supra,* 524 U.S. 721, which stated that the pronouncement of a sentence does not " 'have the qualities of constitutional finality that attend an acquittal.' " (*Id.* at p. 729 [118 S.Ct. at p. 2251].) Further, as *Scott* noted, since the Legislature has specifically required that the People plead and prove an allegation of a prior conviction of a serious or violent felony (§ 667.6), " '*it would seem anomalous to allow the defendant to raise the collateral estoppel doctrine when the prosecutor cannot . . . .*' " (*Scott, supra,* 85 Cal.App.4th at p. 921, quoting *People v. Rice* (1988) 200 Cal.App.3d 647, 654-655 [246 Cal.Rptr. 177].)

We find the analysis in *Scott* persuasive insofar as it correctly rejects the applicability of res judicata and collateral estoppel as a bar to retrial on a strike prior where the initial finding of true was not supported by substantial evidence. (*Scott, supra,* 85 Cal.App.4th at pp. 918-919.) We also agree with the court's conclusion in *Scott* that the doctrine of law of the case serves only to prevent a finding of true on the same facts as were adduced at the first trial. To secure a true finding on an allegation of a prior strike, the People must present evidence in addition to that which was presented at the first trial. (*Id.* at pp. 924-925.) Thus, we agree with the *Scott* court's conclusion that there are no doctrinal or constitutional bars to retrial on the issue of the defendant's strike status.

Finding no doctrinal or constitutional bars to retrial on the issue of the strike prior, we consider Sotello's claim that, notwithstanding the inapplicability of any formal doctrine, retrial should nonetheless be prevented because of considerations of fundamental fairness. In *Mitchell III*, the court discussed at some length the decision in *Burks v. United States, supra,* 437 U.S. 1, wherein the Supreme Court noted in dictum that where the prosecution at trial fails to meet its evidentiary burden, to allow retrial after appeal arbitrarily subjects the defendant to the possibility of a harsher outcome than he would have received if the trial court had properly recognized the insufficiency of the evidence in the first instance. (*Mitchell III, supra,* 81 Cal.App.4th at pp. 151-152.) While we recognize the possibility that such an anomalous result may occur where retrial is allowed on an allegation that should have been found not true in the first instance, we find that the fairness

concern that *Mitchell III* raises is misdirected. Our concern in addressing the issue of fundamental fairness is that all defendants who have similar histories of past felonious conduct should be sentenced similarly. This goal serves the interests of both defendants and the People and is promoted by allowing an allegation to be retried where appellate review has determined the trial court erroneously found sufficient evidence to sustain a true finding at the first trial.

## DISPOSITION

The finding of true as to Sotello's strike prior is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

Dibiaso, Acting P. J., and Vartabedian, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 20, 2002. Brown, J., did not participate therein.